**No. 25-5057**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAMIEN UHL, and those similarly situated,

*Plaintiff-Appellee,*

and

MONIQUE PAYAN, and those similarly situated,
KATHERINE MURPHY, and those similarly situated,

*Plaintiffs,*

v.

ROBLOX CORPORATION, a Delaware corporation,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Southern District of California, No. 3:23-cv-01940-TWR-BLM
The Honorable Todd W. Robinson

## OPENING BRIEF OF DEFENDANT-APPELLANT

Archis A. Parasharami
Daniel E. Jones
Carmen N. Longoria-Green
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
aparasharami@mayerbrown.com

*Attorneys for Defendant-Appellant*

**ORAL ARGUMENT REQUESTED**

## CORPORATE DISCLOSURE STATEMENT

Roblox Corporation is a publicly traded company that trades on the New York Stock Exchange under the ticker RBLX. Roblox does not have a parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................... 1

JURISDICTIONAL STATEMENT ........................................... 5

ISSUES PRESENTED ................................................................ 6

STATEMENT OF THE CASE ................................................... 7

    A.    Uhl agreed to arbitrate his claims against Roblox ............... 7

        1.    Uhl repeatedly agreed to the Roblox Terms, including the arbitration clause, when purchasing Robux at least 130 times between 2018 and 2022. ...... 7

        2.    The terms of Uhl's arbitration agreements. ............... 13

    B.    Uhl sued notwithstanding his arbitration agreements ....... 14

    C.    Uhl's counsel delayed for a year providing basic account information necessary for a motion to compel arbitration. ....................................................................... 15

    D.    The parties agreed to targeted arbitration-related discovery, but Uhl refused to produce any documents or appear for a deposition ....................................................... 19

    E.    The district court denied Roblox's motion to compel arbitration. ...................................................................... 20

SUMMARY OF ARGUMENT .................................................. 23

STANDARD OF REVIEW ........................................................ 26

ARGUMENT ............................................................................. 27

I.    Uhl Agreed To Arbitrate His Claims. ........................................ 27

    A.    Under the summary-judgment standard, Roblox's initial burden was simply to present evidence sufficient to allow a reasonable factfinder to find that the parties agreed to arbitrate. ....................................................... 27

    B.    Roblox satisfied its initial burden ....................................... 30

ii

# TABLE OF CONTENTS
(continued)

**Page**

1.     Roblox produced more than sufficient evidence to allow a reasonable factfinder to conclude that Uhl agreed to the Roblox Terms. ........................................ 30

2.     The district court misapplied the summary-judgment standard. .................................................... 34

C.     Uhl failed to place the making of his arbitration agreements at issue. ......................................... 35

D.     The other arguments Uhl raised in the district court to avoid his arbitration agreements are meritless. ................. 39

    1.     The Roblox website and app provide sufficient notice that completing the transaction constituted acceptance of the Terms. ............................................. 40

    2.     Uhl is a Roblox "User." ............................................. 42

II.     In The Alternative, The District Court At Minimum Erred In Denying Arbitration Rather Than Ordering Discovery Or Holding A Trial Under Section 4 Of The FAA. ............................ 44

III.     Roblox Did Not Waive Its Right To Enforce Uhl's Arbitration Agreements ........................................................................ 50

A.     Roblox did not have knowledge of a right to arbitrate until two weeks before it filed its first motion to compel arbitration. .......................................................... 51

B.     Roblox did not act inconsistently with its right to arbitrate. ......................................................................... 56

    1.     The district court's waiver holding contradicts this Court's precedents. ............................................. 59

    2.     The district court's waiver holding violates the FAA. ............................................................................ 65

    3.     The district court's waiver holding rewards plaintiffs' lawyers for withholding basic information and incentivizes conduct that would burden district courts. ............................................... 69

iii

# TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION ................................................................................ 71

iv

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Airlines for Am. v. City & Cnty. of S.F.,*
  78 F.4th 1146 (9th Cir. 2023) ......................................................27

*Allied-Bruce Terminix Cos. v. Dobson,*
  513 U.S. 265 (1995) ......................................................................71

*Armstrong v. Michaels Stores, Inc.,*
  59 F.4th 1011 (9th Cir. 2023) ......................................... 25, 51, 57, 67

*Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist.*
  *of Tex.,*
  571 U.S. 49 (2013) ........................................................................68

*Banq, Inc. v. Purcell,*
  2024 WL 4164126 (9th Cir. Sept. 12, 2024) .....................................61

*Beltran v. PeopleReady, Inc.,*
  2023 WL 3092973 (N.D. Cal. Apr. 25, 2023) ....................................50

*Berman v. Freedom Fin. Network, LLC,*
  30 F.4th 849 (9th Cir. 2022) ..................................................... 40, 41

*Blau v. AT&T Mobility,*
  2012 WL 10546 (N.D. Cal. Jan. 3, 2012) .................................... 37, 39

*Caccuri v. Sony Interactive Ent. LLC,*
  735 F. Supp. 3d 1139 (N.D. Cal. 2024) ...........................................55

*Caimano v. H&R Block,*
  2024 WL 3295589 (E.D. Pa. July 3, 2024).........................................39

*In re Cellular 101, Inc.,*
  539 F.3d 1150 (9th Cir. 2008)........................................................67

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1987).......................................................................28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......................................................... 42

*Color Street LLC v. Audere, Inc.*,
2023 WL 7298467 (D.N.J. Nov. 3, 2023) ............................................ 39

*Colores v. Ray Moles Farms, Inc.*,
2023 WL 2752379 (E.D. Cal. Mar. 31, 2023)..................................... 62

*Conlon v. United States*,
474 F.3d 616 (9th Cir. 2007)............................................................. 31

*Courtright v. Epic Games, Inc.*,
766 F. Supp. 3d 873 (W.D. Mo. Feb. 13, 2025).................................. 33

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008)........................................................... 58

*Creative Sols. Grp. v. Pentzer Corp.*,
252 F.3d 28 (1st Cir. 2001) .............................................................. 65

*Curnow ex rel. Curnow v. Ridgecrest Police*,
952 F.2d 321 (9th Cir. 1991)............................................................. 53

*Darbellay v. Potter*,
239 F. App'x 371, 2007 WL 2469422
(9th Cir. Aug. 24, 2007) ................................................................... 31

*Daschbach v. Rocket Mortg., LLC*,
2023 WL 2599955 (D.N.H. Mar. 22, 2023)........................................ 39

*Dillon v. BMO Harris Bank, N.A.*,
787 F.3d 707 (4th Cir. 2015)............................................................. 50

*Doctor's Assocs., Inc. v. Jabush*,
89 F.3d 109 (2d Cir. 1996) ............................................................... 36

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023)......................................................... 41, 42

i

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Eshagh v. Terminix Int'l Co.,*
588 F. App'x 703 (9th Cir. 2014)......................................................60

*FBC Mortg., LLC v. Skarg,*
699 F. Supp. 3d 837 (N.D. Cal. 2023).................................................55

*Fox v. Experian Info. Sols., Inc.,*
718 F. Supp. 3d 1231 (E.D. Cal. 2024) ...............................................55

*Global Sec. & Commc'ns, Inc. v. AT&T,*
191 F.3d 460, 1999 WL 513873 (9th Cir. 1999) ..........................63, 64

*Gonder v. Dollar Tree Stores, Inc.,*
144 F. Supp. 3d 522 (S.D.N.Y. 2015)..................................................39

*Hancock v. AT&T,*
701 F.3d 1248 (10th Cir. 2012).....................................................29, 30

*Hansen v. LMB Mortg. Servs., Inc.,*
1 F.4th 667 (9th Cir. 2021) ...........................................27, 29, 37, 45

*Hassan v. U.S. Postal Serv.,*
842 F.2d 260 (11th Cir. 1988)............................................................66

*Heidbreder v. Epic Games, Inc.,*
438 F. Supp. 3d 591 (E.D.N.C. 2020) ...............................................33

*Hill v. Xerox Business Servs., LLC,*
59 F.4th 457 (9th Cir. 2023) ....................................27, 53, 54, 55, 57

*Howard v. Ferrellgas Partners, L.P.,*
748 F.3d 975 (10th Cir. 2014)..........................................3, 25, 29, 46

*Johnson v. Activision Blizzard, Inc.,*
2025 WL 864824 (E.D. Ark. Mar. 19, 2025).....................................33

*Keebaugh v. Warner Bros. Ent. Inc.,*
100 F.4th 1005 (9th Cir. 2024) .....................................................41, 42

ii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Kester v. BellSouth Telecomms., Inc.,*
2019 WL 13267100 (M.D. Fla. Aug. 2, 2019) ................................... 39

*Knapke v. PeopleConnect, Inc.,*
38 F.4th 824 (9th Cir. 2022) ................................................ 48, 49, 50

*Lake Commc'ns, Inc. v. ICC Corp.,*
738 F.2d 1473 (9th Cir. 1984) ................................................... 60

*Lange v. GMT Auto Sales, Inc.,*
708 S.W.3d 147 (Mo. 2025) ................................................... 68, 69

*Martin v. Yasuda,*
829 F.3d 1118 (9th Cir. 2016) ................................................. 57, 62

*Meyer v. Uber Techs., Inc.,*
868 F.3d 66 (2d Cir. 2017) ....................................................... 41

*Morgan v. Sundance, Inc.,*
596 U.S. 411 (2022) ................................................. 51, 61, 66, 67, 69

*Morrison v. Mahoney,*
399 F.3d 1042 (9th Cir. 2005) .................................................... 67

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ............................................................... 70, 71

*Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC,*
931 F.3d 935 (9th Cir. 2019) ..................................................... 61

*Nintendo of Am., Inc. v. Brown,*
94 F.3d 652, 1996 WL 468590 (9th Cir. Aug. 16, 1996) .............. 31, 32

*Noel v. Roblox Corp.,*
2024 WL 3747454 (N.D. Cal. Aug. 8, 2024) ..................................... 50

*Norcia v. Samsung Telecomms. Am., LLC,*
845 F.3d 1279 (9th Cir. 2017) .................................................... 29

iii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Oberstein v. Live Nation Ent., Inc.*,
 60 F.4th 505 (9th Cir. 2023) .......................................... 26, 27, 40, 41

*In re Oracle Corp. Sec. Litig.*,
 627 F.3d 376 (9th Cir. 2010) ..................................................... 28, 36

*Reeves v. Sanderson Plumbing Prods., Inc.*,
 530 U.S. 133 (2000) ................................................................... 28, 29

*Rush v. Oppenheimer & Co.*,
 779 F.2d 885 (2nd Cir. 1985) ........................................................... 65

*Saeeda v. Microsoft Corp.*,
 757 F. Supp. 3d 1172 (W.D. Wash. 2024) ......................................... 56

*Scherk v. Alberto-Culver Co.*,
 417 U.S. 506 (1974) ......................................................................... 68

*Selden v. Airbnb, Inc.*,
 4 F.4th 148 (D.C. Cir. 2021) ............................................................ 41

*Sharif v. Wellness Int'l Network, Ltd.*,
 376 F.3d 720 (7th Cir. 2004) ........................................................... 64

*Simula, Inc. v. Autoliv, Inc.*,
 175 F.3d 716 (9th Cir. 1999) ........................................................... 71

*Smith v. Massachusetts Mut. Life Ins.*,
 2010 WL 11545610 (C.D. Cal. May 25, 2010) ................................... 58

*Soto v. State Indus. Prods., Inc.*,
 642 F.3d 67 (1st Cir. 2011) .............................................................. 37

*Southland Corp. v. Keating*,
 465 U.S. 1 (1984) ............................................................................. 66

*In re StockX Customer Data Sec. Breach Litig.*,
 19 F.4th 873 (6th Cir. 2021) ............................................................ 29

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,*
925 F.2d 1136 (9th Cir. 1991) .......................................................... 34

*Tinder v. Pinkerton Sec.,*
305 F.3d 728 (7th Cir. 2002) ...................................................... 37, 38

*Tu v. Experian Info. Sols., Inc.,*
2025 WL 1134612 (S.D. Cal. Apr. 16, 2025) ...................................... 50

*UA Local 343 United Ass'n of Journeymen & Apprentices v. Nor-Cal Plumbing, Inc.,*
48 F.3d 1465 (9th Cir. 1994) ............................................................ 28

*United Specialty Ins. v. Clean & Sober Media LLC,*
2021 WL 3623300 (C.D. Cal. Apr. 16, 2021) ..................................... 62

*Van Ness Townhouses v. Mar Indus. Corp.,*
862 F.2d 754 (9th Cir. 1988) ...................................................... 61, 64

*Williams v. Cigna Fin. Advisors, Inc.,*
56 F.3d 656 (5th Cir. 1995) .............................................................. 65

*Winters v. AT&T Mobility Servs., LLC,*
2017 WL 2936800 (C.D. Ill. July 10, 2017) ...................................... 39

**Statutes**

9 U.S.C. § 3 ................................................................................ 6, 50

9 U.S.C. § 4 ......................................... 3, 6, 25, 29, 34, 44, 45, 46, 47, 71

9 U.S.C. § 16(a)(1) ............................................................................ 6

28 U.S.C. § 1332(d) ........................................................................... 5

**Other Authorities**

2A J. Moore, Moore's Federal Practice ¶ 8.27[3] (2d ed. 1985) .............. 66

Fed. R. Civ. P. 8(c) .......................................................................... 67

v

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fed. R. Civ. P. 12(b)(3) ............................................................... 68

Fed. R. Civ. P. 12(g) ................................................................... 68

Fed. R. Civ. P. 12(h) ................................................................... 68

Fed. R. Civ. P. 36(a) ................................................................... 32

Fed. R. Civ. P. 56 ................................................................. 27, 28

Fed. R. Civ. P. 56(a) ................................................................... 27

## INTRODUCTION

The district court's order denying arbitration in this case wrongly rewarded plaintiff Damien Uhl's gamesmanship. If allowed to stand, it will create perverse incentives that will saddle district courts with unnecessary motion practice, formal discovery, and ancillary litigation in connection with arbitration motions.

Without offering any justification, Uhl refused for nearly a year to provide the basic account information that defendant Roblox Corporation needed to assess and file a responsible motion to compel arbitration. After finally reversing course and providing that information, Uhl still resisted meaningful discovery on the issue of whether Uhl agreed to arbitrate, submitting only two vague declarations that did not meaningfully rebut Roblox's evidence of an arbitration agreement.

Yet the district court implicitly approved of these tactics, concluding both that Roblox failed to sufficiently demonstrate the existence of an arbitration agreement and that Roblox waived its right to arbitrate.

The district court erred as a matter of law on both points, contravening the Federal Arbitration Act ("FAA") and decisions applying it.

1

*First*, the district court misapplied the summary-judgment standard that applies to motions to compel arbitration. Specifically, the district court imposed on Roblox an initial burden that was far too stringent, and it then failed to shift the burden of proof to Uhl to show a genuine factual dispute about the existence of his arbitration agreement. But as courts applying the FAA have explained, Roblox's initial burden was simply to present sufficient evidence that would allow a reasonable factfinder to conclude that the parties agreed to arbitrate. It was not, as the district court believed, to overcome any ambiguities in the facts and convince the court to prejudge the facts in Roblox's favor. Roblox more than met that burden, providing evidence of over 160 transactions associated with the Uhl account in which the user agreed to Roblox's Terms. And when asked directly which transactions he denied making, Uhl disclaimed only a relative handful of those transactions and did not deny personally making 130 of them. Faced with that evidence, and additional evidence detailed below, a reasonable factfinder easily could have concluded that Uhl agreed to arbitrate.

2

Once Roblox met its initial burden, the burden shifted to Uhl to demonstrate a genuine dispute of material fact. To do so, Uhl was required to unequivocally deny agreeing to arbitrate and provide some evidence to substantiate his denial. Uhl's vague declarations that ignored 130 transactions and that claimed only not to "recall" certain details fell far short of that standard. Under a correct application of the summary-judgment standard, the district court therefore should have granted Roblox's motion and compelled arbitration.

*Second*, even if the district court were correct in deeming "ambiguous" the facts about contract formation, it was not permitted to deny arbitration outright rather than order a summary trial to resolve the disputed factual questions under Section 4 of the FAA. As then-Judge Gorsuch put it, the "[o]ne thing the district court may never do is find a material dispute of fact *does* exist and then proceed to *deny* any trial to resolve that dispute of fact." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). But the district court effectively did just that; it improperly chose to circumvent Section 4's mandate by reframing the issue as a failure of proof by Roblox rather than as a material dispute of

3

fact about whether Uhl made the purchases of "Robux" (virtual currency used on the platform) reflected in Roblox's business records.

*Third*, the district court's waiver holding rested on multiple errors. Roblox neither had knowledge of its right to arbitrate nor acted inconsistently with that right—much less *both*, as required for waiver under this Court's precedent. Roblox could not have responsibly prepared and filed a motion to compel arbitration armed only with Uhl's name and the allegations in his unverified complaint that he purchased Robux at unspecified times and in unspecified ways. And Uhl's counsel refused to provide Roblox with the basic account information (i.e., the username on the account) that Roblox needed to identify the account at issue and the transactions associated with that account. Roblox therefore filed a motion to dismiss that expressly informed the district court of its intention to compel arbitration once it had the necessary information. Roblox never answered the complaint or engaged in merits discovery. Nor did it delay moving to compel arbitration once it had the facts; it filed its first motion to compel arbitration just twelve days after belatedly receiving the account information it had requested from Uhl's counsel.

4

Those circumstances stop far short of what is required to establish waiver. The district court's waiver holding further conflicts with the FAA by making arbitration far more susceptible to waiver than almost all other affirmative defenses, which under ordinary rules of civil procedure are preserved if they are asserted by the time of the answer.

And if the district court's decision is allowed to persist, the inevitable result will be to incentivize further stonewalling by plaintiffs' counsel and to generate burdensome ancillary litigation—including a tidal wave of discovery disputes concerning arbitrability—in connection with motions to compel arbitration, contrary to Congress's aim in enacting the FAA of moving parties to an arbitrable dispute out of court and into arbitration as smoothly as possible.

This Court should reverse the decision below.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the amount placed in controversy by the

proposed class action exceeds $5 million, at least one putative class member is a citizen of a State different from at least one defendant, and there are more than 100 members of the putative class. Dkts. 22, 31.[1]

This Court has jurisdiction under 9 U.S.C. § 16(a)(1). The district court entered its order denying Roblox's motion to compel arbitration and to stay the litigation under Section 3 of the FAA on July 9, 2025 (1-ER-2-20), and Roblox timely filed a notice of appeal on August 8, 2025 (3-ER-322-23).

## ISSUES PRESENTED

1.     Whether the district court erred by holding that Roblox did not meet its initial burden to establish the existence of an arbitration agreement, and therefore erred in denying Roblox's motion because Uhl failed to demonstrate the existence of a genuine issue of material fact.

2.     Whether, even if there were a material factual dispute that precluded granting Roblox's motion to compel arbitration, the district court erred by denying the motion in full rather than ordering the summary trial required by Section 4 of the FAA.

---

[1]     "ER__" refers to Roblox's Excerpts of Record. "Dkt. __" refers to entries on the district court's docket.

3.      Whether the district court erred in concluding that Roblox waived its right to compel arbitration when Roblox placed plaintiff on notice of its potential arbitration defense at the outset of the case and filed its first motion to compel arbitration less than two weeks after Uhl's counsel provided the account information Roblox required to confirm the existence of an arbitration agreement.

## STATEMENT OF THE CASE

**A.      Uhl agreed to arbitrate his claims against Roblox.**

**1.      Uhl repeatedly agreed to the Roblox Terms, including the arbitration clause, when purchasing Robux at least 130 times between 2018 and 2022.**

Roblox operates an immersive online gaming platform that "hosts a virtual universe" where millions of users, both children and adults, "can create virtual games and experiences, connect with other users to enjoy user-created games and user-created virtual experiences, and use virtual apparel and other content created by themselves and other users." 2-ER-122; 3-ER-247. Roblox users can make in-game purchases using "Robux," the platform's virtual currency. 3-ER-247; 2-ER-122.

Robux must be purchased using real-world currency. 3-ER-247. There are multiple ways to purchase Robux, such as through the Roblox

7

website, the Roblox app, Xbox, and different third-party channels (such as retailers selling Robux gift cards). 3-ER-250, 262-63. The mechanics of the transaction vary based on the device used and payment method chosen by the customer. The details of the transaction mechanisms also have changed over time, as website or app interfaces are updated. 2-ER-125.

The account that Uhl's minor child used to access the Roblox platform (the "Uhl account") was created, with Uhl's permission, on November 7, 2018. 2-ER-122-23; 3-ER-197.[2] The Roblox Terms in effect at that time made clear that "[i]n order to agree to these Terms, you need to (1) be 18 or older, or have your parent or guardian's consent to agree to the Terms, and (2) have the power to enter a binding contract with us and not be barred from doing so under any applicable laws." 2-ER-137.

Uhl admitted that, before allowing his child to access the Roblox platform, he reviewed the 2017 version of the Roblox Terms, which included an arbitration provision. 3-ER-265. Roblox's records show that

---

[2]     Uhl alleges that all three of his children began using the Roblox platform in June 2017, but his counsel provided only the username associated with the Uhl account that was created in November 2018. As the district court acknowledged, "[i]t therefore appears possible that Plaintiff's child(ren) may have had an additional account (or accounts) between June 2017, and November 7, 2018." 1-ER-7-8.

from December 2018 through July 2024, there were **_over 160 transactions_** to purchase Robux associated with the Uhl account. 2-ER-128-34. These transactions took place using multiple purchase mechanisms: credit or debit card payments through the Roblox website, Apple Pay payment through the Roblox app, and Google Pay payment through the Roblox app. 2-ER-123; 2-ER-128-34.

Uhl agreed to Roblox's Terms when he purchased Robux through each of these mechanisms—any one of which was sufficient to create an arbitration agreement.

*Website*. From May 2, 2018 through January 2023, users who purchased Robux through the Roblox website and opted to pay with a debit or credit card were presented with a screen stating: "By submitting payment information you acknowledge that you are at least 18 years old, and that you have read, understood and agree to be bound by . . . Roblox Terms including the arbitration clause . . . ." 2-ER-123-24. The phrase "Roblox Terms" appeared in blue, underlined font and was a hyperlink to the full text of the Terms. *Id*. A user had to click the "Pay now" button to complete the transaction and express assent to the Terms. *Id*. The screen is reproduced below:

9



2-ER-124.

*Roblox App*. From February 24, 2021 to October 16, 2022, users using a mobile device to purchase Robux through the Roblox app were

presented with a disclosure at the top of the screen stating: "By purchasing Robux, you agree to our **Terms of Use** including the arbitration clause and to our **Privacy Policy**." 2-ER-124-25. The underlined, bold phrase "**Terms of Use**" was a hyperlink to the full text of the then-current Terms of Use. *Id*. The disclosure language was updated on October 17, 2022 (and remains current), but the layout, font size, bolding, and underlining remained the same. The updated disclosure reads: "By purchasing Robux, you agree to our **Terms of Use** and **Privacy Policy**, including the arbitration clause and **revocation policy**." 2-ER-124-25. The updated disclosure is reproduced below:



2-ER-125.

Below this disclosure, the screen listed options for the amount of Robux the customer could purchase. Once the customer chose the amount of Robux to buy, a screen would pop up to enable the customer to complete the transaction. The pop-up that appeared depended on the payment method on the customer's device: Apple Pay or Google Pay. 2-ER-125-26. To complete a transaction with either payment method, the user had to provide affirmative consent for the charge by either double clicking the device's side button (Apple Pay) or clicking a "1-tap buy" button on the screen (Google Pay). *Id.*

In response to a request by Roblox's counsel to identify any transactions that he did not personally make, Uhl submitted a declaration stating that he "did not personally make" 36 of the more than 160 transactions, specifically all of the ones after June 2022 as well as one earlier purchase. 3-ER-198; 3-ER-194. For 130 other transactions between December 2018 and June 2022, however, Uhl did not disclaim making those purchases personally. Those transactions could not be completed without agreeing to the Roblox Terms using one of the processes described above.

12

### 2.  The terms of Uhl's arbitration agreements.

Uhl agreed to two versions of the Roblox Terms when purchasing Robux between December 2018 and June 2022: the November 2018 Terms (2-ER-135-53) and the April 2022 Terms (2-ER-154-80). Both contained an arbitration provision.

The November 2018 arbitration provision states:

> <u>Agreement to Arbitrate</u>. You and we agree to arbitrate all Disputes . . . between you and us or our affiliates, except Disputes related to our intellectual property rights. You and we empower the arbitrator with the exclusive authority to resolve any Dispute, including without limitation any part of these Terms are void or voidable.

2-ER-149.

The April 2022 arbitration provision states:

> **Disputes.** Except as explained below, User and Roblox agree that any dispute arising under or relating to the Roblox Terms or the Services ("Dispute") will be governed and resolved first through the Informal Dispute Resolution Requirements stated below, and only if those requirements are satisfied, then, for U.S. residents only, through binding arbitration and not through litigation. This agreement applies regardless of the legal theories involved in the Dispute and regardless of whether the Dispute is with Roblox, its subsidiaries, affiliates or parent company, or any suppliers or service providers involved with the Services, or their officers, directors, employees, agents, or successors.

2-ER-163.

For purposes of the April 2022 arbitration provision, "Users" are defined as "Everyone who uses the Services." 3-ER-188. "Services" in turn are defined as "Collectively, all of the various features and services, like websites, applications, forums and the Platform, which Roblox makes available to Users to allow Users to play, create and connect." 3-ER-187.[3]

## B. Uhl sued notwithstanding his arbitration agreements.

Despite repeatedly agreeing to arbitrate his claims, Uhl (along with two other plaintiffs who are no longer parties to this action) filed this putative class action against Roblox, alleging that one of his minor children received inappropriate messages from another user while using the Roblox platform and that Roblox failed to adequately warn him that Roblox's child-safety features could not guarantee that his children would never see objectionable content on the platform. *See* Dkt. 1-2.[4] Based on these allegations, Uhl asserted a variety of state-law consumer-protection and common-law claims—all on his own behalf, not on behalf of his

---

[3] These definitions are found in the Roblox Dictionary, which is expressly incorporated by reference into the Terms. 3-ER-182-89.

[4] Roblox denies Uhl's allegations that its child-safety features are inadequate; it uses robust safety tools, safeguards, and policies, including parental controls. But the merits of Uhl's claims are for an arbitrator to decide.

children. 3-ER-270-81. The complaint does not identify the accounts at issue. *See generally* 3-ER-246-81.

### C. Uhl's counsel delayed for a year providing basic account information necessary for a motion to compel arbitration.

This lawsuit was originally filed in California state court on August 7, 2023. On September 11, 2023, even before Roblox had been formally served with the complaint, Roblox's counsel asked for the Roblox usernames for the accounts that the plaintiffs' children used to access the Roblox platform so that Roblox could verify whether the plaintiffs "are Roblox users." 3-ER-238; Dkt. 1 ¶ 2. Without providing any justification for their position, plaintiffs' counsel declined to provide the usernames unless Roblox propounded formal discovery through the litigation process. 3-ER-236.

Roblox timely removed the case from California state court and plaintiffs responded by moving to remand. Dkt. 20. The parties and the court agreed to put Roblox's response to the complaint on hold pending the resolution of the remand motion. Dkt. 19, 21. The district court de-

15

nied that motion in February 2024—four months after the notice of removal—and at that point ordered Roblox to file its initial response to the complaint. Dkt. 32.

Roblox responded by moving to dismiss for failure to state a claim on March 11, 2024. 3-ER-284-321. In that motion, Roblox notified the district court that "[p]rior to filing this Motion, Roblox asked Plaintiffs to disclose their Roblox usernames so that Roblox could determine whether Plaintiffs were parties to an enforceable arbitration agreement." 3-ER-294. Roblox explained that it was unable to file a motion to compel arbitration at that time because "Plaintiffs refused to provide this information." *Id.* Roblox stated that it "expressly reserves, and does not waive, its right to compel arbitration at a later point." *Id.*

Nearly a year into the litigation, the district court partially granted Roblox's motion to dismiss on July 10, 2024. *See* Dkt. 47. The district court gave plaintiffs leave to file a Fourth Amended Complaint. Dkt. 52.[5]

---

[5] Plaintiffs amended their complaint once before the case was removed to federal court (Dkt. 1-2), another time shortly after removal (Dkt. 14), a third time after dropping one of the original plaintiffs (Dkt. 48), and a fourth time after the district court's ruling granting in part Roblox's motion to dismiss.

Plaintiffs filed that complaint—the operative complaint—on August 14, 2024. 3-ER-246-83.

On August 16, 2024, two days after plaintiffs filed the operative amended complaint, Roblox's counsel again asked for the usernames, explaining that Roblox intended "to move to compel arbitration of Plaintiffs' claims" but that Roblox needed "targeted discovery directed to determining the version of Roblox's Terms to which Plaintiffs assented." 3-ER-241. In an effort "to avoid further discovery or substantial changes to the current briefing schedule," Roblox's counsel asked for "Plaintiffs' usernames by EOD today," but further made clear that if plaintiffs' counsel insisted on "more formal discovery on this issue, we can coordinate on a timeframe for that and will, in the interim, seek a stay of the rest of the case pending resolution of this issue." *Id*. In response to this request, plaintiffs' counsel finally provided the usernames. 3-ER-240.

On August 28, 2024, less than two weeks after receiving this information, Roblox moved to compel arbitration of Uhl's claims under the August 2023 version of Roblox's Terms; Roblox based the motion on Robux purchases after August 1, 2023 that were associated with the Uhl

17

account. 3-ER-206-34. The motion also explained why Roblox had been unable to file an arbitration motion earlier:

> Nearly one year ago, Roblox asked Plaintiffs to provide their Roblox usernames so Roblox could investigate whether Plaintiffs had agreed to arbitrate their claims. Plaintiffs refused to do this, and they maintained their position until a few days ago, when they finally provided the usernames.

3-ER-213.

Prior to filing the motion to compel arbitration, Roblox had sought agreement from Uhl's counsel to stay briefing on Roblox's anticipated second motion to dismiss "[g]iven that the motion to compel, if granted, will moot any concurrently filed motion to dismiss." 3-ER-243. But Uhl's counsel responded they would "oppose any motion by Roblox to push its obligation to answer or move to dismiss." *Id.* As a result, Roblox filed its second motion to dismiss at the same time as the motion to compel arbitration. But Roblox expressly moved to dismiss only in the alternative; Roblox asked the district court to rule on the motion to compel first. 3-ER-232. The district court stayed briefing on the motion to dismiss pending resolution of the arbitration motion. Dkt. 62.

**D. The parties agreed to targeted arbitration-related discovery, but Uhl refused to produce any documents or appear for a deposition.**

Uhl opposed the motion to compel arbitration by asserting that he had no knowledge of any Robux purchases made through the Uhl account after the August 2023 Terms became effective. 3-ER-205. The parties then agreed to engage in "targeted and limited discovery" about Uhl's notice of and assent to those and other versions of Roblox's Terms, and Roblox (with the court's approval) withdrew its motion to compel arbitration without prejudice to renewal following that discovery. 3-ER-201; Dkt. 68. Despite the parties' agreement, Uhl refused to sit for a deposition or to produce documents. 2-ER-30. Instead, Uhl agreed only to respond to written questions from Roblox, which he did via two short declarations. *Id*; 3-ER-190-99; 2-ER-58.

The first declaration provided only a partial answer to Roblox's question, which provided a list of Robux transactions associated with the Uhl account and asked Uhl to identify the purchases that he disputed personally making. 2-ER-74 (seeking "[a] list of all purchases identified on the payment spreadsheets associated with the relevant Roblox accounts that Plaintiffs dispute personally making"); 2-ER-72 (reiterating

19

that request after receiving Uhl's initial declaration). Uhl then submitted a supplemental declaration. 3-ER-196-99. In his declarations, taken together, Uhl asserted that he had no knowledge of and did not authorize 36 of the transactions in Roblox's records. 3-ER-194, 3-ER-197-98. He never denied making the remaining 130 transactions. Uhl's declarations also stated that he does not "recall" certain information, such as "personally making any transactions with Roblox" using his debit or credit cards, 3-ER-198, or the "instructions" he gave to his "child specifically related to purchases made on Roblox." 3-ER-193.

### E.  The district court denied Roblox's motion to compel arbitration.

Following this discovery, Roblox filed its second motion to compel arbitration in March 2025. Dkt. 80. Roblox explained that by repeatedly and undisputedly purchasing Robux through the Roblox website and app between December 2018 and June 2022, Uhl agreed to the November 2018 and April 2022 versions of the Roblox Terms, each of which contains an arbitration provision. *Id.* The district court denied the motion. 1-ER-2-20.

20

***Contract Formation***. The court first held that Roblox had not shown that Uhl agreed to arbitrate. The district court acknowledged that while Uhl expressly disclaimed a relative handful of the Robux purchases made through the Uhl account, there remained "approximately 130 transactions that Plaintiff does not specifically disclaim knowledge of or attest to making personally." 1-ER-13. The district court further criticized Uhl's declarations as "artfully vague." 1-ER-16. But the district court nonetheless concluded that Roblox had not met its burden of demonstrating the existence of a contract, asserting that, despite Roblox's evidence and Uhl's failure to deny making or authorizing the transactions, the court could not "infer that Plaintiff personally made at least one of those 130 remaining transactions." 1-ER-13.

The district court refused to permit any further discovery on Uhl's agreement to the Roblox Terms. In its briefing, Roblox had sought further discovery "[t]o the extent the Court believes that there is a genuine dispute of fact about Plaintiff's assent to Roblox's Terms" because Uhl had "resist[ed] producing documents or sitting for a deposition." 1-ER-15-16 (quotation marks omitted). But the district court rejected that request as

coming "too late," saying that "[a]lthough the Court appreciates the Parties' attempts to resolve their discovery issues without the involvement of the Court, the time for Defendant to seek the Court's intervention to obtain reasonable discovery to ascertain the extent of Plaintiff's assent to Defendant's Terms of Service was *before* filing its initial and instant motions." 1-ER-16.

*Waiver*. The district court additionally held that Roblox had waived its right to compel arbitration. The court stated that Uhl has alleged from his "first appearance in the case" that he "is a . . . parent of three children who used the Roblox platform beginning in around 2017" and that he "and his wife spent money on the Roblox platform on at least a monthly basis to pay for Robux." 1-ER-17 (quotation marks omitted). Based on these allegations alone, the court said, Roblox "had knowledge of its right to compel" Uhl to arbitration. *Id.*

The court also determined that Roblox had acted inconsistently with its right to arbitrate. Although Roblox had not answered the complaint or engaged in any non-arbitration related discovery, the district court believed that Roblox waived its arbitration right by filing a motion to dismiss that addressed the merits of Uhl's claim, specifically "whether

22

[Uhl's] claims [were] barred by Section 230" of the Communications Decency Act. 1-ER-18.

Roblox timely appealed. 3-ER-322-23.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's denial of Roblox's motion to compel arbitration.

**I.** The district court misapplied the summary-judgment standard in concluding that Roblox failed to prove that Uhl had agreed to Roblox's Terms.

Roblox easily met its initial burden of providing sufficient evidence for a reasonable factfinder to conclude that the parties agreed to arbitrate. There were over 160 transactions made through the Roblox website and app associated with the Uhl account, and Roblox demonstrated that, to complete each of those transactions, the customer had to agree to the Roblox Terms.

The district court's refusal to credit Roblox's evidence rested on a fundamental error. The district court recognized that the summary-judgment standard applies. But it failed to recognize that Roblox's initial burden under that standard was merely to present sufficient evidence that

23

would *allow* a rational factfinder to find in Roblox's favor. And the district court believed it was required to make all inferences in favor of Uhl as the non-moving party—but that requirement applies only to the question of whether there is a genuine issue of material fact that warrants a trial, not whether Roblox had met its initial burden in the first place.

Once Roblox met its initial burden, the burden shifted to Uhl to create a factual dispute about contract formation. When expressly asked to list each transaction he denied personally making, Uhl disclaimed only 36 of the transactions. Uhl's vague declarations further stated that he did not "recall" various details—such as completing transactions with his debit or credit cards or the instructions he gave his child about purchasing Robux—but otherwise said *nothing* about the 130 other transactions associated with the Uhl account. That was insufficient as a matter of law to meet Uhl's burden of creating a factual dispute, and the district court should have granted Roblox's motion.

**II.** Even if this Court were to determine that Uhl's showing sufficed to create a factual dispute over contract formation—and it did not—the district court still erred in denying Roblox's motion. The district court called the facts "ambiguous" and critiqued Uhl's declarations as "artfully

24

vague." 1-ER-16. But the district court nonetheless denied Roblox's motion rather than ordering further discovery or resolving any factual disputes through the summary trial that is required by Section 4 of the FAA. That was error: Section 4 of the FAA requires a *trial* to resolve material fact disputes, and a district court may not cut off the resolution of factual issues by denying arbitration outright. *See Howard*, 748 F.3d at 978.

**III.** The district court also erred by holding that Roblox had waived its right to arbitrate. Roblox neither had knowledge of its right to arbitrate nor acted inconsistently with that right, both of which are required to establish waiver. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023).

Roblox did not know of its right to arbitrate until 12 days before it filed its first motion to compel arbitration. To identify accounts, or the transactions performed through those accounts, Roblox needs the username associated with the account. But Uhl's counsel refused to provide that information for almost a year—without justification and despite Roblox's repeated requests. During that time, Roblox could *not* have responsibly moved to compel arbitration, because it did not have admissible evidence that would support such a motion. The district court erred in

25

disregarding this reality and instead insisting that Roblox knew it had the right to arbitrate based on nothing more than Uhl's allegation in an unverified complaint that he had purchased Robux at an unspecified time and in unspecified ways.

Roblox also did not act inconsistently with its right to arbitrate. Roblox filed its motion to compel less than two weeks after receiving the relevant usernames. Prior to filing that motion, Roblox had removed the case and timely filed a motion to dismiss to comply with the district court's order to respond to the complaint. It alerted the district court in its motion to dismiss that Uhl's counsel was withholding the very information Roblox needed to prepare and file a motion to compel arbitration. The district court's determination that these actions were inconsistent with the right to arbitrate contravenes this Court's precedents and conflicts with decisions from other courts. It further violates the FAA by treating arbitration as easier to waive than other affirmative defenses, which are preserved when raised by the time of filing an answer.

## STANDARD OF REVIEW

This Court reviews de novo the denial of a motion to compel arbitration, *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir.

26

2023), including a district court's "determination that a party has waived the right to arbitrate," *Hill v. Xerox Business Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023).

## ARGUMENT

### I. Uhl Agreed To Arbitrate His Claims.

#### A. Under the summary-judgment standard, Roblox's initial burden was simply to present evidence sufficient to allow a reasonable factfinder to find that the parties agreed to arbitrate.

This Court has made clear that the Federal Arbitration Act requires district courts to "rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure" when determining whether an agreement to arbitrate exists. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).

That standard provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Airlines for Am. v. City & Cnty. of S.F.*, 78 F.4th 1146, 1152 (9th Cir. 2023) (quotation marks and citation omitted).

27

Rule 56 imposes a shifting burden of proof. "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). That "initial responsibility" includes identifying the evidence that supports its position and that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1987). In this context, that is evidence supporting a "prima faci[e]" case that the parties agreed to arbitrate. *UA Local 343 United Ass'n of Journeymen & Apprentices v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994) (concluding that the movants "have borne their initial burden" by producing evidence of "facts that, if uncontroverted," would support the movants' position).

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*, 627 F.3d at 387.

Although "the court must draw all reasonable inferences in favor of the nonmoving party" in determining whether material facts are genuinely disputed, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

28

133, 150 (2000). Instead, under the FAA, those credibility and other factual determinations are made by the factfinder at a trial convened "summarily" to decide the issue. 9 U.S.C. § 4; *see also Hansen*, 1 F.4th at 670. The party seeking arbitration must ultimately prove the existence of an arbitration agreement (at trial, if warranted) by a preponderance of the evidence. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

But unless and until the other party sufficiently places the arbitration agreement "in issue," 9 U.S.C. § 4, the moving party's initial burden is not an overly demanding one. The movant's initial burden is merely "to produce evidence *that would allow a reasonable jury to find that a contract exists." In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021) (emphasis added); *see also*, *e.g.*, *Howard*, 748 F.3d at 979-80 (rejecting argument that a motion to compel arbitration must be denied and "the FAA's trial guarantee doesn't apply" unless the movant has first definitively "proven the existence of an agreement to arbitrate") (cited approvingly by *Hansen*, 1 F.4th at 672); *Hancock v. AT&T*, 701 F.3d 1248, 1264 (10th Cir. 2012) (evidence that "raise[s] an inference"

29

that an arbitration agreement exists is "enough" to "shift[] the burden to Plaintiffs to raise a genuine factual dispute").

### B. Roblox satisfied its initial burden.

#### 1. Roblox produced more than sufficient evidence to allow a reasonable factfinder to conclude that Uhl agreed to the Roblox Terms.

Roblox easily satisfied its initial burden under the summary-judgment standard. Roblox submitted a spreadsheet listing more than 160 Robux purchases associated with the Uhl account. 2-ER-128-34. That list included purchases made with a credit or debit card through the Roblox website and purchases made through the Roblox app using both Apple Pay and Google Pay. *Id.*; 2-ER-123. Roblox also submitted evidence showing how, for each of those transactions, Uhl or someone acting with his authorization agreed to the Roblox Terms, including the arbitration provision. *See* pp. 9-12, *supra*.

Roblox also submitted Uhl's two declarations addressing these transactions. 3-ER-190-99. The declarations were prompted by Roblox's request that Uhl "list . . . all purchases identified on the payment spreadsheets associated with the relevant Roblox account[] that Plaintiff[] dispute[s] personally making." 2-ER-74; *see also* 2-ER-119. In response to

30

this request, Uhl's declaration states that he "dispute[s] personally making transactions identified in lines 2-36 on the spreadsheet provided by Roblox's counsel" and that Uhl additionally disputes making one other purchase on January 18, 2022. 3-ER-197-98; 2-ER-128-34.

The combination of the spreadsheet reflecting Roblox's business records of transactions by the Uhl account and Uhl's failure to deny making 130 of those transactions in response to direct questioning thus means that Roblox affirmatively showed that Uhl personally made the 130 transactions.

Indeed, Uhl's non-responses with respect to most of the transactions in Roblox's business records are no different than non-responses to requests for admission or interrogatories, which this Court has recognized can be treated as admissions and used by the moving party to support summary judgment. *See*, *e.g.*, *Conlon v. United States*, 474 F.3d 616, 618 (9th Cir. 2007); *Darbellay v. Potter*, 239 F. App'x 371 (table), 2007 WL 2469422, at *1 (9th Cir. Aug. 24, 2007) (citing *Conlon*); *Nintendo of Am., Inc. v. Brown*, 94 F.3d 652 (table), 1996 WL 468590, at *2 (9th Cir. Aug. 16, 1996); *see also* Fed. R. Civ. P. 36(a) (failure to respond to requests for admission is deemed an admission).

31

Moreover, a reasonable factfinder also could rely on other carefully-worded statements by Uhl to conclude that the parties agreed to arbitrate. For example, Uhl stated in one of his declarations that "I have not personally made any purchases or payments to Roblox, via the Apple AppStore or otherwise, *since before the initiation of this litigation.*" 3-ER-193 (emphasis added). That statement strongly implies that Uhl *did* make such purchases through the Apple AppStore *before* this lawsuit was filed in 2023, including during the 2018-2022 timeframe. Indeed, Uhl's statement could mean just that he stopped making Robux purchases the day before the lawsuit was filed.

A reasonable factfinder also could conclude that Uhl agreed to arbitrate even if it found that Uhl did not personally make all of the 130 transactions—though even a single one would have been enough to form an arbitration agreement. Such a finding would simply raise another issue: whether the 130 transactions were made by Uhl's child with Uhl's awareness that the transactions were occurring. Uhl's declaration states that his child "accessed the Roblox platform with [Uhl's] permission"; that his "debit card information . . . is saved as the payment method on [his] child's Apple iPhone"; that his "CashApp payment information was

32

saved on the computer tablets and [his] wife's prior mobile device"; and that his "child is given permission to make small purchases through the Apple AppStore from time to time." 3-ER-191, 3-ER-193.

Notably, to avoid conceding that Uhl personally purchased Robux, Uhl's own counsel strategically parsed his client's declarations as instead "admi[tting]" that "transactions prior to June 14, 2022 listed by Roblox . . . were *authorized* by Mr. Uhl." 2-ER-94-95. That is an incorrect reading of the declarations, but in all events, such an admission would more than suffice to allow a reasonable factfinder to conclude that Uhl's child had authority to act as Uhl's agent and agree to the Terms on Uhl's behalf. *See Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591, 597 (E.D.N.C. 2020) (minor child had authority to accept agreement on parent's behalf); *Johnson v. Activision Blizzard, Inc.*, 2025 WL 864824, at *4 (E.D. Ark. Mar. 19, 2025) (similar); *Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 904 (W.D. Mo. Feb. 13, 2025) (similar).[6]

---

[6]    Uhl's declaration was also internally contradictory on this point. It stated that his child's permission to "make small purchases through the Apple AppStore" "is not extended to make purchases of Robux," 3-ER-193, but elsewhere said only that Uhl does "not *recall* providing instructions to [his] child specifically related to purchases made on Roblox," *id.* (emphasis added).

### 2. The district court misapplied the summary-judgment standard.

The district court believed that it could not credit Roblox's evidence of the 130 transactions Uhl did not dispute making, or the other evidence just discussed, because doing so would improperly draw an inference in favor of Roblox, the moving party. 1-ER-13.

But that conclusion misunderstands the applicable summary-judgment standard. The rule that inferences are drawn in favor of the non-moving party goes only to the question of whether there is a *"genuine issue of fact* concerning the formation of the agreement" that warrants a *trial* under Section 4 of the FAA. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (emphasis added; quotation marks omitted).

The district court went astray by transplanting that rule to the antecedent question of whether Roblox, as the moving party, met its initial burden. The requirement to draw inferences in favor of the nonmoving party does not apply in that context; rather, as the cases we discuss above explain, the inquiry is just whether Roblox presented enough evidence that a rational factfinder could decide in its favor. *See* pp. 27-30, *supra.*

34

Once Roblox did so, the burden shifted to *Uhl* to demonstrate a genuine issue of fact surrounding the making of his arbitration agreement. As we next discuss, even taking all inferences in Uhl's favor, he failed to meet that burden, and therefore failed to rebut Roblox's evidence that he had agreed to arbitration.

### C. Uhl failed to place the making of his arbitration agreements at issue.

Uhl asserted that he "did not personally make" a relative handful of the Robux purchases completed through the Uhl account, but he did not deny personally making the account's 130 other transactions. 3-ER-198. He also stated that he does not "*recall*" "personally making any transactions with Roblox" using his debit or credit cards. 3-ER-198 (emphasis added). And to the extent that Uhl's child may have been making the transactions with Uhl's authorization, Uhl said that he does not "*recall* providing instructions to [his] child specifically related to purchases made on Roblox." 3-ER-193 (emphasis added). Those statements are insufficient as a matter of law to generate a genuine dispute of material fact concerning contract formation.

35

This Court has explained that, at summary judgment, "[t]he non-moving party must do more than show there is some metaphysical doubt as to the material facts at issue." *In re Oracle Corp.*, 627 F.3d at 387 (quotation marks omitted). The non-moving party's "burden is not a light one," and it "must come forth with evidence from which a [factfinder] could reasonably render a verdict in the non-moving party's favor." *Id.*

Courts applying these principles thus repeatedly hold that declarations like Uhl's are insufficient as a matter of law to create a factual dispute over contract formation. The Second Circuit has held that, to establish a genuine issue of fact with respect to contract formation, "an unequivocal denial that the agreement to arbitrate had been made is needed, and some evidence should be produced to substantiate the denial." *Doctor's Assocs., Inc. v. Jabush*, 89 F.3d 109, 114 (2d Cir. 1996) (quotation marks and alterations omitted). The First and Seventh Circuits have similarly held that the party opposing arbitration "must identify specific evidence in the record demonstrating a material factual dispute for trial." *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (same).

36

This Court has cited *Soto* and *Tinder* (among several other decisions) approvingly in articulating the summary-judgment standard that applies to motions to compel arbitration. *See Hansen*, 1 F.4th at 670 n.1. Judge Breyer similarly has synthesized the standard articulated in the above decisions: once evidence establishing the existence of an arbitration agreement has been provided by the party seeking to compel arbitration, the opposing party must both (1) "unequivocally deny" agreeing to arbitrate; and (2) provide some evidence to substantiate the denial. *Blau v. AT&T Mobility*, 2012 WL 10546, at *3 (N.D. Cal. Jan. 3, 2012).

Here, Uhl fell far short of meeting his burden under that standard. He did not unequivocally deny agreeing to the Terms for 130 of the transactions by the Uhl account, much less provide any evidence to substantiate a denial. Instead, he signed two "artfully vague" declarations. 1-ER-16. Far from creating a genuine issue of fact, Uhl's declarations only underscored that he could not truthfully deny purchasing Robux at least 130 times and agreeing to the Roblox Terms each time.

Beyond that, Uhl stated only that he did not recall pertinent information, such as using certain credit or debit cards or the instructions he provided to his child with respect to making Robux purchases. 3-ER-193,

3-ER-198. Yet courts have held time and again that asserting a mere lack of recollection is insufficient as a matter of law to create a factual dispute.

The Seventh Circuit's decision in *Tinder* is instructive. The plaintiff in *Tinder* opposed arbitration by arguing that she did not receive notice of her employer's new arbitration program, but her only evidence in support of that argument "was her own affidavit in which she aver[red] that she d[id] not *recall* seeing or reviewing" the brochure announcing the program. 305 F.3d at 735-36 (emphasis added). The Seventh Circuit held that the plaintiff's affidavit "does not raise a genuine issue whether the brochure was distributed to her." *Id.* at 736. "Just as in summary judgment proceedings," the court explained, "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* at 735.

Courts across the country are in accord in rejecting arguments that a failure to recall entering into a contract creates a genuine dispute over the contract's formation. *See, e.g., Caimano v. H&R Block*, 2024 WL 3295589, at *11 (E.D. Pa. July 3, 2024); *Color Street LLC v. Audere, Inc.*, 2023 WL 7298467, at *7 (D.N.J. Nov. 3, 2023); *Daschbach v. Rocket*

38

*Mortg., LLC*, 2023 WL 2599955, at *5 n.22 (D.N.H. Mar. 22, 2023); *Kester v. BellSouth Telecomms., Inc.*, 2019 WL 13267100, at *9-10 (M.D. Fla. Aug. 2, 2019); *Winters v. AT&T Mobility Servs., LLC*, 2017 WL 2936800, at *4 (C.D. Ill. July 10, 2017); *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015).

For good reason. As Judge Breyer summarized, "[i]f a party could get out of a contract by arguing that he *did not recall* making it, contracts would be meaningless." *Blau*, 2012 WL 10546, at *4 (emphasis added). A lack of recollection is far short of an unequivocal denial, much less a denial supported by evidence.

In sum, because Roblox met its burden to demonstrate that an arbitration agreement existed, and because Uhl failed to present sufficient evidence to rebut Roblox's showing, the district court erred by declining to grant the motion to compel on the record before it.

### D. The other arguments Uhl raised in the district court to avoid his arbitration agreements are meritless.

Uhl made two other arguments below that the district court did not reach. He argued that Roblox's contract-formation processes do not result in the formation of a valid contract. Dkt. 84 at 21-27. And he argued that

39

he was not a Roblox "User" bound by the arbitration provision. *Id.* at 27-30. To the extent Uhl raises either of these arguments as an alternative ground for affirmance, this Court should reject them as meritless.

### 1. The Roblox website and app provide sufficient notice that completing the transaction constituted acceptance of the Terms.

This Court has made clear that "an enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Oberstein*, 60 F.4th at 515 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). Both requirements were met here.

First, the Terms were reasonably conspicuous—in other words, the notice was "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856. Roblox's design choices comport with decisions of this Court and others applying California law:

- the notice appears in a conspicuous part of the user's uncluttered screen;

40

- it alerts the user that by completing the purchase, the user agrees to the Terms;

- the hyperlink to the Terms is underlined and either in a different-colored font or bolded;

- the notice is no smaller than the surrounding text; and

- the notice uses bold lettering.

*See* pp. 9-12, *supra*; *see also, e.g., Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020-21 (9th Cir. 2024) (statement below a button alerted the consumer that clicking the button would constitute acceptance of the terms); *Oberstein*, 60 F.4th at 515 (similar); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 705-07 (2d Cir. 2023) (similar); *Selden v. Airbnb, Inc.*, 4 F.4th 148, 157 (D.C. Cir. 2021) (similar, applying California law); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) (similar, applying California law).

Second, Uhl had to take action—clicking a button—to unambiguously express his assent to the Terms. To complete a Robux purchase through the website, he had to click the "Pay now" button. *See* p. 9, *supra*. And to complete a purchase on the app, he had to either double-click the side button (to use Apple Pay) or click "1-tap buy" (on Google Pay). *See*

41

p. 12, *supra*; *Keebaugh*, 100 F.4th at 1020-21 (app users had to tap button saying "Play" to agree to the terms of service); *Edmundson*, 85 F.4th at 707-08 (holding that "[r]easonable internet users would understand that selecting 'Confirm and continue'" would constitute agreement to the terms). In either setting, the screen expressly informed Uhl that by completing the purchase he was agreeing to Roblox's Terms, including the arbitration clause. *See* pp. 9-12, *supra*.[7]

In sum, the Roblox website and the app comport with established standards for the formation of online contracts.

### 2. Uhl is a Roblox "User."

Uhl argued below that he was not bound by the April 2022 arbitration provision—one of the versions of the provision applicable during the

---

[7] The recent decision by a divided panel of this Court in *Chabolla v. Class-Pass Inc.*, 129 F.4th 1147 (9th Cir. 2025), is not to the contrary, on either reasonable notice or assent. There were three website screens at issue. The notice of contract terms on the first screen was insufficient because of "the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color." *Id.* at 1157. And the second and third screens failed to demonstrate the user's assent because there was no language that connected the "Continue" or "Redeem Now" buttons to agreement to contract terms. *Id.* at 1158-60. As just discussed, Roblox's process contains none of these defects.

42

time frame when Uhl accepted the Roblox Terms—because that provision states "User and Roblox agree" to arbitrate their disputes, and Uhl maintained that he is not a Roblox "User" because he did not use the Roblox virtual gaming platform. 2-ER-163. But the Roblox Dictionary incorporated by reference into the April 2022 Terms defines "Users" as "*Everyone* who uses the Services," and defines "Services" as "Collectively, all of the various features and services, like *websites, applications*, forums, and the Platform, which Roblox makes available to Users to allow Users to play, create and connect." 3-ER-187-88 (emphases added). By using the Roblox website and app to purchase Robux at least 130 times, Uhl became a "User" of the "Services" and is bound by the Terms.

And Uhl was bound by the April 2022 Terms for an independent reason: those Terms explain that guardians of minor users are bound by the Terms when they allow their minor child to play Roblox. 2-ER-156 ("By permitting a Minor User to use the Services, the Guardian of the Minor User becomes subject to these User Terms . . . ."). Uhl concedes that he gave his minor child permission to access and use the Roblox platform. 3-ER-191.

43

In any event, Uhl also agreed to the November 2018 version of the Terms. *See* 2-ER-130-34 (showing Robux purchases from December 2018 through March 2022). And the November 2018 version provides that "*You* and we agree to arbitrate all Disputes . . . between you and us or our affiliates . . . ." 2-ER-149 (emphasis added). There is no need, then, for Uhl to be a "User" of the Roblox virtual platform to be bound by the November 2018 Terms.

## II. In The Alternative, The District Court At Minimum Erred In Denying Arbitration Rather Than Ordering Discovery Or Holding A Trial Under Section 4 Of The FAA.

Roblox produced sufficient unrebutted evidence to demonstrate that Uhl agreed to the Terms and therefore was required to arbitrate his dispute. But even if this Court were to disagree and conclude that Uhl's responses created a factual dispute on that point, at minimum the evidence was sufficient to allow a reasonable factfinder to conclude that Uhl agreed to arbitrate. The district court was thus required to further develop the record through discovery or hold a summary trial under Section 4 of the FAA—not to deny the motion to compel arbitration altogether.

Under Section 4 of the FAA, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in

44

issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Thus, if a court "concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen*, 1 F.4th at 672. As this Court has underscored, "a court is *not authorized* to dispose of a motion to compel arbitration until *after* [material] factual disputes have been resolved." *Id.* at 671 (emphasis added).

The district court's rationale for denying arbitration outright reflects two fundamental errors.

*First*, the district court acknowledged that Uhl's declarations were "artfully vague" and asserted that "the facts are ambiguous." 1-ER-16. Yet, rather than order further fact development or a summary trial to resolve ambiguities in the facts, it recast the issue as a "failure of proof" by Roblox. *Id.* Ambiguous facts are not equivalent to a "failure of proof" by the moving party, and, as discussed above (at 30-33), at minimum a reasonable factfinder *could* conclude based on Roblox's evidence that Uhl agreed to arbitrate. Indeed, the district court acknowledged that, based

45

on the evidence submitted by Roblox, "it is certainly possible that Plaintiff personally made one of the purchases at issue" and therefore agreed to the Roblox Terms. 1-ER-13. That acknowledgment should have been sufficient for the district court to at minimum send the question to a factfinder to resolve through summary trial under Section 4.

The district court's error is the same as the one that the Tenth Circuit reversed in *Howard*. There, the district court had denied the defendant's motion to compel arbitration after determining there were "material disputes of fact [that] prevented it from saying for certain whether or not the parties had agreed to arbitrate." 748 F.3d at 978. The Tenth Circuit reversed, explaining that the district court should have "proceed[ed] to resolv[ing] the conflicting factual accounts through trial as the [FAA] requires." *Id.* "One thing the district court may never do," the court explained, "is find a material dispute of fact *does* exist and then proceed to *deny* any trial to resolve that dispute of fact. That's like mixing apples and oranges, like saying someone who fails to win a summary judgment motion must necessarily lose after trial." *Id.* In other words, a moving party may fail to win outright at summary judgment, yet still demonstrate there are disputed facts that are for a factfinder to resolve.

46

The district court here made the same error by failing to account for that possibility. While Roblox maintains that its evidence was more than sufficient to prevail as a matter of law under a proper application of the summary-judgment standard, the district court's contrary view was not a legitimate basis for *denying* arbitration, but rather would call for ordering further discovery or a summary trial under Section 4.

*Second*, the district court faulted Roblox for not pursuing formal discovery on contract formation *before* moving to compel arbitration. It stated that while "the Court appreciates the Parties' attempts to resolve their discovery issues without the involvement of the Court, the time for Defendant to seek the Court's intervention to obtain reasonable discovery to ascertain the extent of Plaintiff's assent to Defendant's Terms of Service was *before* filing its initial and instant motions." 1-ER-16.

The district court's reasoning cannot be squared with this Court's decision in *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022). There, PeopleConnect argued that the plaintiff was bound by an arbitration agreement assented to by the plaintiff's attorney. In its motion to compel arbitration, PeopleConnect "noted . . . that if the district court did not grant its motion, it requested leave to engage in limited discovery

47

about the agency relationship" between the plaintiff and her attorney. *Id.* at 833. The plaintiff responded by accusing PeopleConnect of "want[ing] it both ways—if it won the motion to compel, great; if it didn't win, only then did it want discovery. . . . it rolled the dice and chose not to pursue additional discovery at the outset." *Id.* (quotation marks omitted).

But this Court held that "[n]othing required PeopleConnect to seek discovery first" before moving to compel arbitration. *Id.* That is because, the Court explained, "the FAA's procedure mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by *optional* discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary." *Id.* (emphasis added). Upon concluding that there was a material dispute of fact regarding the plaintiff's agency relationship, the Court "remand[ed] for discovery on this issue." *Id.*

*Knapke* is on all fours with this case. The district court here, much like the plaintiff in *Knapke*, tried to fault Roblox for seeking discovery in the alternative only if the court believed it did not have enough information to grant the motion on the existing record. 1-ER-16 ("[B]oth sides have staked their stratagems, and Defendant's wager that it had a 'clear

48

answer' regarding the . . . purchases of Robux from the Uhl Account did not win the day.").

But under *Knapke*, Roblox was under no obligation to complete formal discovery prior to filing its motion to compel. 38 F.4th at 833. And, just as in *Knapke,* because Roblox "conditionally, and sufficiently, requested discovery in its motion to compel," *id.*, Roblox was "entitled to discovery" on those issues related to contract formation in the event the district court deemed the current record insufficient, *id.* at 834. Indeed, courts routinely order further discovery regarding contract formation after concluding that uncertainties about the facts preclude granting an arbitration motion as a matter of law.[8] The district court here should have done the same.

Relatedly, the district court's holding effectively limited Roblox to one shot of proving contract formation on the fullest possible record. But that result is impossible to square with *Knapke* and its recognition that

---

[8] *See, e.g.*, *Tu v. Experian Info. Sols., Inc.*, 2025 WL 1134612, at *9 (S.D. Cal. Apr. 16, 2025) (citing *Knapke*; renewed motion to compel arbitration pending); *Noel v. Roblox Corp.*, 2024 WL 3747454, at *6 (N.D. Cal. Aug. 8, 2024) (citing *Knapke*; claims later voluntarily dismissed); *Beltran v. PeopleReady, Inc.*, 2023 WL 3092973, at *8 (N.D. Cal. Apr. 25, 2023) (ordering discovery; plaintiff later stipulated to arbitration).

49

a party has more than one opportunity to demonstrate the existence of an arbitration agreement. 38 F.4th at 833. The Fourth Circuit too has recognized that "no authority—not the FAA, the Federal Rules of Civil Procedure, or any other source of law of which we are aware—limits a party to only one motion under §§ 3 or 4 of the FAA." *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 715 (4th Cir. 2015). The Fourth Circuit thus held that the district court in that case had erred by refusing to allow the defendant to bring a renewed motion to compel arbitration with additional factual support. *Id.* at 715-16.

In sum, the district court erred by effectively giving Roblox one shot to prove contract formation, and then denying arbitration altogether rather than ordering further discovery or holding a summary trial when it determined that the facts surrounding Uhl's assent to Roblox's Terms remained ambiguous.

## III. Roblox Did Not Waive Its Right To Enforce Uhl's Arbitration Agreements.

The district court additionally erred when it held that Roblox had waived its right to arbitrate. Under this Court's two-part test, "the party asserting waiver must demonstrate: (1) knowledge of an existing right to

compel arbitration and (2) intentional acts inconsistent with that existing right." *Armstrong*, 59 F.4th at 1015.[9] Uhl did not meet his burden as to either requirement, let alone both.

### A. Roblox did not have knowledge of a right to arbitrate until two weeks before it filed its first motion to compel arbitration.

The district court faulted Roblox for not filing its motion to compel as its initial response to the complaint. In the district court's view, Uhl's allegation in the unverified complaint that he had purchased Robux was enough for Roblox to have "had knowledge of its right to compel Plaintiff to arbitration since the date Plaintiff was added as a party to this case." 1-ER-17. But that conclusion ignores the reality of what is required to responsibly prepare and file a motion to compel arbitration and Roblox's burden of proof on such a motion—a burden that the district court (incorrectly) held Roblox had not met even on a much fuller record.

---

[9] *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), "abrogate[d]" this Court's precedents to the extent they required the party opposing arbitration to demonstrate prejudice." *Armstrong*, 59 F.4th at 1015. But this Court's pre-*Morgan* precedents remain good law to the extent they are based on the two prongs that remain under the current waiver test.

51

Even before being served with the complaint, Roblox immediately asked for the usernames for the plaintiffs' accounts. *See* p. 15, *supra.* Without the username needed to identify an account—which in turn will provide information about any Robux purchases associated with that account—Roblox could not present proof confirming how and when plaintiffs, including Uhl, accepted the Terms (and therefore how and when an arbitration agreement was formed). In other words, without the account information, Roblox could not determine when Uhl purchased Robux or which version of the Terms Uhl may have accepted. And Roblox did not know whether Uhl purchased Robux using the Roblox website, mobile app, or third-party channels (such as gaming consoles or retailers selling gift cards), and therefore did not know the corresponding mechanism by which Uhl may have agreed to the Terms.

Indeed, Roblox's counsel could not have responsibly prepared and filed a motion to compel arbitration until Roblox received those usernames and was able to identify the Robux transactions associated with Uhl's account. At the time Roblox received Uhl's complaint, the only information available to it was Uhl's unverified allegation that he had purchased Robux at unspecified times since 2017 in unspecified ways. If

52

Roblox had filed a motion to compel arbitration at that point, plaintiffs surely would have challenged the motion for lack of proof, arguing that Roblox's showing lacked specificity and that under a summary-judgment standard "the mere pleadings themselves are not sufficient." *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir. 1991).

The district court cited *Hill v. Xerox Business Services, LLC*, 59 F.4th 457 (9th Cir. 2023), in holding that Roblox knew it had a right to arbitrate for waiver purposes even before Roblox could file a motion to compel arbitration. 1-ER-17. But *Hill* is readily distinguishable and does not support the district court's waiver holding.

*Hill* was an employment class action involving two arbitration agreements: one from 2002 and one from 2012. 59 F.4th at 460. The defendant had litigated for seven years and waited to move to compel arbitration of the claims of the class members who agreed to the 2002 arbitration agreement until after the court certified a class and the opt-out period had run. *Id.* at 468-69. What's more, while the defendant had argued in opposition to class certification and in other prior filings that employees who agreed to the *2012* version of the arbitration agreement

53

should be excluded from any class, it made no comparable argument invoking its arbitration rights under the *2002* arbitration agreement. *Id.* at 462, 468-69.

This Court held that the defendant had waived the right to enforce the 2002 arbitration agreement, explaining that "we have never suggested that for waiver purposes, knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement." *Id.* at 469. That is the language relied on by the district court here. 1-ER-17. But that language was merely referring to the fact that absent class members are not parties before the court prior to class certification, and therefore could not be subject to a motion to compel arbitration. What mattered for the knowledge prong of the waiver analysis was that the employer in *Hill* had *long known* from its own records *which employees* had agreed to the 2002 version of the arbitration agreement but had not previously sought to exclude them from the class for that reason. *Id.* at 469-71.[10]

---

[10] District courts in this Circuit have held that the plaintiff asserting waiver met its burden of establishing the defendant's knowledge when the defendant had actual knowledge of its arbitration rights. *See, e.g.*, *Fox v. Experian Info. Sols., Inc.*, 718 F. Supp. 3d 1231, 1238 (E.D. Cal.

There were no comparable circumstances here. Roblox could not confirm—and told the district court it could not confirm—whether an arbitration agreement existed until (at minimum) it received the username for the Uhl account. And once it received the username, Roblox promptly sought additional information from Uhl to verify that he or someone acting with his authorization had made the Robux purchases associated with the Uhl account. *See* pp. 19-20, *supra*. The circumstances here closely resemble *Saeeda v. Microsoft Corp.*, 757 F. Supp. 3d 1172 (W.D. Wash. 2024), in which the court held that Microsoft did not have knowledge of its right to arbitrate because, although Microsoft knew the named plaintiffs had created Microsoft accounts, plaintiffs' counsel had not provided additional information related to the plaintiffs' use of those

---

2024) (defendant was "aware of the existence of an allegedly applicable arbitration agreement from the very start"); *Caccuri v. Sony Interactive Ent. LLC*, 735 F. Supp. 3d 1139, 1151 (N.D. Cal. 2024) (defendant was "aware of an existing right to compel arbitration" and had previously "referred to its arbitration rights"); *FBC Mortg., LLC v. Skarg*, 699 F. Supp. 3d 837, 842 (N.D. Cal. 2023) (defendants "acknowledged having notice of the arbitration clauses"). Nothing in *Hill* or those cases suggests that the mere possibility of an arbitration defense satisfies actual knowledge of an arbitration right for waiver purposes

accounts, which was "the information [that Microsoft] needed to compel arbitration." *Id*. at 1186.

Finally, the district court's determination that Roblox had knowledge of its right to arbitrate at the beginning of this case (when all Roblox had was Uhl's complaint) cannot be squared with the court's ruling earlier in its opinion that Roblox's much more detailed showing still failed to present sufficient evidence of contract formation. While the district court erred in holding that the information available to Roblox when it filed its second motion to compel arbitration was insufficient to demonstrate that Uhl agreed to arbitrate his claims, that determination should have led the district court to conclude that Uhl's pleading alone did not provide Roblox with knowledge of its arbitration rights for waiver purposes.

## B. Roblox did not act inconsistently with its right to arbitrate.

Even if Roblox had knowledge of its right to arbitrate earlier—and it did not—Roblox still did not waive that right because it did not act inconsistently with the right to arbitrate.

"[A] party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case *for a prolonged period of time* in order to take advantage of being in court." *Armstrong*, 59 F.4th at 1015 (emphasis added; quotation marks omitted). "There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions." *Hill*, 59 F.4th at 471 (quotation marks omitted).

When Roblox's actions are considered in totality, it did not "choose[] to delay [its] right to compel arbitration by actively litigating" in federal court for a prolonged period of time. *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Far from it. Any delay in bringing the motion to compel arbitration was due to Uhl's counsel refusing to provide the requested usernames for nearly a year. Roblox originally requested those usernames at the very outset of the case. 3-ER-238. Roblox then removed the case—and it is well-established that removing a case to federal court is not inconsistent with the right to arbitrate. *See, e.g., Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1126 (9th Cir. 2008) (no waiver where employer removed to federal court and then moved to compel arbitration);

*Smith v. Massachusetts Mut. Life Ins.*, 2010 WL 11545610, at *15 (C.D. Cal. May 25, 2010) (collecting additional cases). Following removal, the parties then litigated a motion for remand that the district court did not resolve until February 2024, at which point Roblox was ordered to respond to the complaint. Dkt. 32.

Due to Uhl's refusal to disclose the username for the relevant account, Roblox remained unable to determine whether an arbitration agreement existed. Accordingly, Roblox timely filed its motion to dismiss as ordered by the district court—indeed, it would have lost the right to move to dismiss had it not done so by the court-ordered response deadline—but alerted the court in that motion that it was unable to move to compel arbitration because "Plaintiffs refused to provide" the requested usernames. 3-ER-294. In that filing, Roblox "expressly reserve[d], and d[id] not waive, its right to compel arbitration at a later point." *Id*. Finally, after the district court had partially granted the motion to dismiss and plaintiffs had filed yet another amended complaint, Uhl's counsel provided the usernames. 3-ER-240. Once Roblox received the usernames, it acted promptly—it filed its first motion to compel arbitration a mere

58

12 days later and only six months after the district court determined that this case was properly in federal court. 3-ER-206-34.

Given that timeline and circumstances, the district court's waiver holding was wrong for multiple reasons. It conflicts with this Court's precedents. It violates the FAA because it imposes a different—and far more strict—waiver rule for arbitration than for other affirmative defenses. And it rewards stonewalling by plaintiffs' counsel and threatens to generate additional litigation in connection with motions to compel arbitration, contrary to the FAA's aim of moving parties to an arbitrable dispute out of court and into arbitration as quickly as possible.

> **1.    The district court's waiver holding contradicts this Court's precedents.**

The district court held that Roblox acted inconsistently with its right to arbitrate because it filed a motion to dismiss that addressed the merits of Uhl's claims—specifically, raising the threshold issue that his claims are barred by Section 230 of the Communications Decency Act. 1-ER-18. But filing a motion to dismiss—including a motion to dismiss that raises merits arguments—is not in itself inconsistent with the right to arbitrate. This Court has consistently required more for waiver.

Indeed, this Court has previously held that a party that moved to dismiss did not waive its arbitration rights. *See, e.g., Eshagh v. Terminix Int'l Co.*, 588 F. App'x 703, 703 (9th Cir. 2014) ("Regardless of whether Terminix had knowledge of an existing right to compel arbitration . . . , it did not act inconsistently with such a right by filing a motion to dismiss prior to its motion to compel arbitration."); *Lake Commc'ns, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984) (no waiver when ICC filed motion to dismiss and did not seek arbitration until more than a year after the complaint was filed), *overruled on other grounds by Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632-40 (1985).

By contrast, this Court has been more likely to hold that there was a waiver when the party asserting its arbitration right actively engaged in merits discovery or delayed in filing a motion to compel despite a present ability to do so. *See Banq, Inc. v. Purcell*, 2024 WL 4164126, at *1-2 (9th Cir. Sept. 12, 2024) (defendants acted inconsistently with the right to arbitrate by not just filing a motion to dismiss but also "participat[ing] in discovery proceedings before the district court by submitting an amended joint Rule 26(f) report, a discovery plan and scheduling order, a stipulated protective order, and a stipulation regarding documents and

60

electronically stored information"); *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 942 (9th Cir. 2019) (defendant acted inconsistently with its known right to arbitrate by *withdrawing* its motion to compel arbitration and instead filing a motion to dismiss, and only re-filing the motion to compel—a year later—after receiving an adverse ruling on the motion to dismiss), *abrogated on other grounds by Morgan*, 596 U.S. at 413-14; *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (defendants acted inconsistently with the right to arbitrate by answering complaints, moving to dismiss, not raising the right to arbitrate in any pleading, approving a pre-trial conference order, and not filing a motion to compel arbitration until three months before trial).

In light of decisions like these, a district court recently summarized that, "even where the party seeking arbitration has filed a motion to dismiss on the merits, the Ninth Circuit has not found waiver without prolonged delays and 'significant additional litigation activity.'" *Colores v. Ray Moles Farms, Inc.*, 2023 WL 2752379, at *4 (E.D. Cal. Mar. 31, 2023) (quoting *United Specialty Ins. v. Clean & Sober Media LLC*, 2021 WL 3623300, at *2 (C.D. Cal. Apr. 16, 2021)).

61

The district court pointed to *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016), in support of its waiver holding. 1-ER-19. But in *Martin*, the defendants "spent seventeen months" "devoting considerable time and effort to a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, *answering discovery*, and *preparing for and conducting a deposition*." 829 F.3d at 1126 (emphasis added; quotation marks and citation omitted). And the defendants there "did not even note their right to arbitration until almost a year into the litigation" and told the district court that "they were likely 'better off' in federal court." *Id.*

The facts here are not remotely comparable. Before it was even served, Roblox sought the information it needed to support a responsible motion to compel arbitration. Roblox raised its intent to assert its arbitration rights (if supported by the facts) in its first motion to dismiss that it was compelled to file by the court-ordered response deadline, notifying the district court that Uhl was refusing to provide basic account information. *See* 3-ER-294. Roblox did *not* engage in merits discovery; to the contrary, it opposed plaintiffs' counsel's efforts to open merits discovery.

62

*See* 2-ER-80 ("we disagree that Plaintiffs are entitled to commence discovery on the merits given the pending motion to compel arbitration"). And Roblox never told the court or opposing counsel of any intention to litigate in federal court rather than in arbitration.

The circumstances here are most comparable to *Global Security & Communications, Inc. v. AT&T*, 191 F.3d 460 (Table), 1999 WL 513873 (9th Cir. 1999). In that case, AT&T did not yet know whether an arbitration agreement existed when it filed motions to dismiss and to strike because it did not have copies of the contracts between the plaintiff and authorized AT&T dealers and did not know when those contracts were signed. *Id.* at \*1. It sought the necessary information from the plaintiff, however, and once the plaintiff provided the necessary information "six weeks later"—rather than a year later, as in this case—AT&T filed its motion to compel arbitration within a few weeks. *Id.*

This Court held that AT&T had not acted inconsistently with its right to arbitrate. *Id.* at \*2. As the Court summarized, "AT&T's conduct does not approach the *Van Ness* level of litigation. AT&T filed its initial motions before answering, and filed its motion to compel promptly after learning of the arbitration clause in the Global agreements." *Id.*

63

While *Global Security* is unpublished, its reasoning is persuasive and applies here. And as in *Global Security*, Roblox promptly moved to compel arbitration less than two weeks after receiving the username needed to identify the Uhl account.

Finally, the district court's approach also conflicts with other courts of appeals, which agree that merely filing a motion to dismiss is not an act inconsistent with the right to arbitrate. As the Seventh Circuit has put it, "it is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726-27 (7th Cir. 2004) (citing cases from this Court and from the First, Second, and Fifth Circuits). As another of those courts has observed, a pre-answer motion to dismiss is "an appropriate responsive pleading" that, without more, does not mean that "the litigation machinery has been substantially invoked" or that "the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated." *Creative Sols. Grp. v. Pentzer Corp.*, 252 F.3d 28, 33 (1st Cir. 2001) (alterations and quotation marks omitted). Indeed, while no merits discovery has taken place here, it is notable that at least two circuits have rejected waiver even after some merits discovery had been

64

taken. *See, e.g.*, *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661-62 (5th Cir. 1995) (Cigna did not waive right to arbitration after it "removed the action to federal court, filed a motion to dismiss, filed a motion to stay proceedings, answered [the] complaint, asserted a counterclaim, and exchanged Rule 26 discovery"); *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2nd Cir. 1985) (no waiver after "taking rather extensive discovery, bringing a motion to dismiss, and posing thirteen affirmative defenses to the amended complaint").

### 2. The district court's waiver holding violates the FAA.

The district court's waiver holding also runs afoul of the FAA because it adopts different (and harsher) rules for waiver of arbitration than for other types of affirmative defenses.

The Supreme Court has made clear that general federal common-law principles governing whether a party's conduct constitutes waiver of a contractual right should be applied in the same manner in the arbitration context as they are in the non-arbitration context. *Morgan*, 596 U.S. at 416-19.

An affirmative defense is one that "'does not tend to controvert the opposing party's prima facie case as determined by the applicable substantive law.'" *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) (quoting 2A J. Moore, Moore's Federal Practice ¶ 8.27[3] (2d ed. 1985)). A defense that the plaintiff has agreed to resolve his dispute by arbitration rather than by litigation in court falls squarely within that definition, because it does not address the merits of the plaintiff's claims. *See Southland Corp. v. Keating*, 465 U.S. 1, 4 (1984) (Southland had included in its answer "the affirmative defense of failure to arbitrate"); *Armstrong*, 59 F.4th at 1015 ("Michaels pleaded arbitration as an affirmative defense in its answers[.]"). *Cf. Morgan*, 596 U.S. at 414 (noting that Sundance's answer "assert[ed] 14 affirmative defenses—but none mention[ed] the arbitration agreement").

According to ordinary and generally applicable rules of civil procedure, an affirmative defense must be raised by the time the defendant files the answer. *See* Fed. R. Civ. P. 8(c); *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008); *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) (filing motion to dismiss does not waive affirmative defenses). Indeed, Federal Rule of Civil Procedure 8(c) also expressly lists

66

other contract-based affirmative defenses, like "accord and satisfaction," "release," and "arbitration and award" (which applies when an arbitration has already been completed). Fed. R. Civ. P. 8(c). A request to arbitrate an ongoing dispute should be treated the same way.

What is more, arbitration is *not* among the handful of expressly enumerated defenses that are waived if not raised at the first opportunity. For example, lack of personal jurisdiction or insufficiency of process or service of process must be raised in a pre-answer motion (or an answer if no pre-answer motion is filed), or else are permanently waived. Fed. R. Civ. P. 12(g)-(h). Arbitration is conspicuously absent from that list.[11]

---

[11] "[I]mproper venue" is included in the list of defenses that must be raised at the first opportunity. Fed. R. Civ. P. 12(b)(3). But "improper venue" in that context refers only to the situation where a case does not meet the requirements of the federal venue statutes—not where there is a contractual defense to the case proceeding in the forum. *See Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55-59 (2013) (holding that a Rule 12(b)(3) motion is not the proper mechanism to enforce a forum-selection clause); *compare Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (noting that an arbitration agreement "is, in effect, a specialized kind of forum-selection clause").

67

Notably, the Missouri Supreme Court recently held that a defendant did not waive its right to arbitrate by filing a pre-answer motion to dismiss for precisely this reason. *Lange v. GMT Auto Sales, Inc.*, 708 S.W.3d 147, 153 (Mo. 2025) (en banc). As that court explained, under Missouri's generally applicable rules of civil procedure (which mirror the federal rules), "[a] party does not waive an affirmative defense until after and unless the affirmative defense is omitted in the responsive pleadings." *Id.* And "[b]ecause the right to arbitration is an affirmative defense and was properly raised prior to and in [the defendants'] responsive pleadings," the mere filing of a pre-answer motion to dismiss did not demonstrate a clear, intentional relinquishment of the defendant's arbitration rights. *Id.* Finally, the court noted, "[*Morgan v.*] *Sundance* prohibits applying the rules differently to arbitration." *Id.* at 153 n.8.

This Court should reach the same result. Because Roblox raised its arbitration defense long before filing any answer—indeed, the answer has not yet been filed—it did not waive its right to arbitrate as a matter of law.

68

### 3. The district court's waiver holding rewards plaintiffs' lawyers for withholding basic information and incentivizes conduct that would burden district courts.

The district court's waiver holding is not only wrong on the law, but if upheld it would yield significant adverse consequences.

First, it would reward gamesmanship by parties resisting arbitration. Roblox acted promptly to nail down the facts needed to support its arbitration motion by reaching out to plaintiff's counsel and asking for the usernames connected to the relevant Roblox accounts. This type of basic account information is routinely exchanged informally as a matter of course. But Uhl's counsel took a different approach, refusing to provide that information for nearly a year. And even after the parties agreed to limited discovery on contract formation, Uhl still refused to sit for a deposition or produce documents. The judicial system should not reward parties or their counsel for deliberately hiding the ball. But the district court's waiver holding did just that.

Second, and relatedly, the inevitable response to this type of stonewalling will be to force a party seeking to compel arbitration to make an immediate demand for formal arbitration-related discovery whenever an

69

arbitration defense is potentially available. Not all courts may be willing to stay the responsive pleading deadline during such discovery—which would force a defendant to file a motion to dismiss because it faces an untenable choice between a potential default judgment and the waiver of arbitration.

But in all events, a waiver rule that opens the floodgates to formal discovery in court would be antithetical to "Congress's clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Discovery should be the exception, not the rule, for motions to compel arbitration; the FAA "call[s] for an expeditious and summary hearing" on arbitration motions "with only *restricted inquiry* into factual issues." *Id.* (emphasis added). As this Court has made clear, discovery (and if necessary a summary trial) are appropriate "*only* if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (emphasis added) (quoting 9 U.S.C. § 4) (affirming district court's denial of plaintiff's request for pre-arbitration discovery).

70

Yet the incentive created by the waiver holding below—to launch into immediate formal discovery—would generate additional ancillary litigation in connection with arbitration motions and burden courts with the obligation to supervise formal arbitration-related discovery and resolve attendant discovery disputes. In short, it would "breed[] litigation from a statute that seeks to avoid it." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 275 (1995).

## CONCLUSION

The Court should reverse the district court's order denying the motion to compel arbitration and remand with instructions to grant the motion.

Dated: October 22, 2025      Respectfully submitted,

*/s/ Archis A. Parasharami*

Archis A. Parasharami
Daniel E. Jones
Carmen N. Longoria-Green
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
aparasharami@mayerbrown.com

*Attorneys for Defendant-Appellant*

72

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned counsel states

that there are no related cases pending before this Court.

Dated: October 22, 2025          */s/Archis A. Parasharami*
                                          Archis A. Parasharami

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32-1(a) because this brief contains 13,954 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Dated: October 22, 2025        */s/Archis A. Parasharami*
Archis A. Parasharami

74

## CERTIFICATE OF SERVICE

I certify that on October 22, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

*/s/Archis A. Parasharami*
Archis A. Parasharami