**No. 25-5057**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

DAMIEN UHL, and those similarly situated,

*Plaintiff-Appellee,*

and

MONIQUE PAYAN, and those similarly situated,
KATHERINE MURPHY, and those similarly situated,

*Plaintiffs,*

v.

ROBLOX CORPORATION, a Delaware corporation,

*Defendant-Appellant.*

---

On Appeal from the United States District Court for the
Southern District of California, No. 3:23-cv-01940-TWR-BLM
The Honorable Todd W. Robinson

---

## REPLY BRIEF OF DEFENDANT-APPELLANT

---

Andrew J. Pincus
Carmen N. Longoria-Green
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
apincus@mayerbrown.com

*Attorneys for Defendant-Appellant*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................... 1

ARGUMENT ........................................................................................... 2

I.    Uhl Agreed To Arbitrate. ............................................................ 2

    A.    Roblox's unrebutted evidence establishes that Uhl agreed to the Roblox Terms. ................................................ 2

    B.    Alternatively, the district court erred in denying arbitration rather than ordering discovery or holding a trial under Section 4 of the FAA. ........................................... 5

    C.    Uhl's alternative grounds for affirmance should be rejected. ............................................................................ 8

        1.    The Roblox website and app provide sufficient notice that completing the transaction constitutes acceptance of the Terms. ............................................... 8

        2.    Uhl is a Roblox "User." ............................................... 18

II.    Roblox Did Not Waive Its Right To Enforce Uhl's Arbitration Agreements ............................................................. 20

    A.    Suspicion that an arbitration agreement may exist is insufficient to establish waiver. .......................................... 22

        1.    Roblox did not know that Uhl had entered into an arbitration agreement until it received the username. ................................................................. 23

        2.    Uhl's authorities confirm that waiver requires actual knowledge. ...................................................... 24

        3.    Roblox was not obligated to pursue arbitration-specific discovery prior to filing the motion to compel. ......................................................................... 28

    B.    Roblox did not act inconsistently with a right to arbitrate. ......................................................................... 29

i

# TABLE OF CONTENTS
(continued)

**Page**

    1.    Roblox did not have to file a futile motion to compel..........................................................................30

    2.    Filing a motion to dismiss does not automatically waive the right to arbitrate. ....................................32

C.    The district court's waiver holding violates the FAA..........37

CONCLUSION ...............................................................................38

ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023) ................................................ 20, 21, 35

*Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*,
2014 WL 3371842 (N.D. Cal. July 9, 2014) ........................................ 7

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
289 F.3d 589 (9th Cir. 2002) ............................................................ 3

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .................................................... 9, 11, 17

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .................................................. 11, 12

*DeVries v. Experian Info. Sols., Inc.*,
2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ...................................... 24

*Doe v. Massage Envy Franchising*,
LLC, 87 Cal. App. 5th 23 (2022) ................................................ 12, 13

*Doyle v. UBS Fin. Servs., Inc.*,
144 F.4th 122 (2d Cir. 2025) ....................................................... 34, 36

*Fisher v. A.G. Becker Paribas Inc.*,
791 F.2d 691 (9th Cir. 1986) ....................................................... 31, 36

*G & G Prods. LLC v. Rusic*,
902 F.3d 940 (9th Cir. 2018) ........................................................... 19

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .............................................. 17

*Global Sec. & Commc'ns, Inc. v. AT&T*,
1999 WL 513873 (9th Cir. July 20, 1999) ........................................ 37

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Godun v. JustAnswer LLC,*
135 F.4th 699 (9th Cir. 2025) .................................................. 11, 16

*Hill v. Xerox Bus. Servs., LLC,*
59 F.4th 457 (9th Cir. 2023) ............................................. 27, 28, 35

*Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.,*
589 F.3d 917 (8th Cir. 2009) .......................................................... 36

*Houghton v. Polychain Alchemy, LLC,*
2025 WL 2965204 (9th Cir. Oct. 21, 2025) ...................... 26, 27, 29, 34

*Howard v. Ferrellgas Partners, L.P.,*
748 F.3d 975 (10th Cir. 2014) ......................................................... 5, 6

*Hunter v. U.S. Dep't of Educ.,*
115 F.4th 955 (9th Cir. 2024) ......................................................... 6, 7

*Joca-Roca Real Estate, LLC v. Brennan,*
772 F.3d 945 (1st Cir. 2014) ............................................................ 37

*Kelly-Starkebaum v. Papaya Gaming Ltd.,*
2024 WL 5135799 (S.D.N.Y. Dec. 17, 2024) ..................................... 18

*Kloosterman v. Metro. Hosp.,*
153 F.4th 501 (6th Cir. 2025) ................................................... 33, 36

*Knapke v. PeopleConnect, Inc.,*
38 F.4th 824 (9th Cir. 2022) ........................................................ 8, 28

*Martin v. Yasuda,*
829 F.3d 1118 (9th Cir. 2016) .............................................. 30, 31, 33

*Moran v. Selig,*
447 F.3d 748 (9th Cir. 2006) .......................................................... 23

*Morgan v. Sundance, Inc.,*
596 U.S. 411 (2022) .................................................................. 20, 38

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Newirth ex rel. Newirth v. Aegis Senior Comtys., LLC,*
  931 F.3d 935 (9th Cir. 2019)............................................... 30, 31, 33, 36

*Oberstein v. Live Nation Ent., Inc.,*
  60 F.4th 505 (9th Cir. 2023) ............................................... 8, 9, 10, 12

*Pacito v. Trump,*
  169 F.4th 895 (9th Cir. 2026) .............................................. 6

*Parker v. Kearney Sch. Dist.,*
  130 F.4th 649 (8th Cir. 2025) ............................................. 25, 26, 29

*Parsittie v. Schneider Logistics, Inc.,*
  2023 WL 2629869 (C.D. Cal. Feb. 8, 2023) ......................... 24

*Pizarro v. QuinStreet, Inc.,*
  2022 WL 3357838 (N.D. Cal. Aug. 15, 2022)....................... 17

*Sanchez v. Valencia Holding Co.,*
  353 P.3d 741 (Cal. 2015).................................................... 19

*Small v. Allianz Life Ins. Co. of N. Am.,*
  122 F.4th 1182 (9th Cir. 2024) ........................................... 26

*Smith v. GC Servs. Ltd. P'ship,*
  907 F.3d 495 (7th Cir. 2018)............................................... 26, 29

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum*
  *Prods. Co.,*
  969 F.2d 585 (7th Cir. 1992)............................................... 34, 35, 36

*Support Comty., Inc. v. MPH Int'l, LLC,*
  2025 WL 547380 (9th Cir. Feb. 19, 2025) ........................... 37

*Townsend v. Holman Consulting Corp.,*
  929 F.2d 1358 (9th Cir. 1990)............................................. 31

*Valli v. Avis Budget Grp. Inc.,*
  162 F.4th 396 (3d Cir. 2025)............................................... 31, 35

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*White v. Samsung Elecs. Am., Inc.*,
   61 F.4th 334 (3d Cir. 2023)................................. 24, 25, 29, 33, 34, 36

*Wilson v. Huuuge, Inc.*,
   944 F.3d 1212 (9th Cir. 2019)......................................................... 7

**Statutes**

9 U.S.C. § 4 ..................................................................................5, 6

**Other Authorities**

Apple Pay,
   https://www.apple.com/apple-pay/.............................................. 17, 18

Fed. R. Civ. P. 11(b)..............................................................................31

vi

## INTRODUCTION

The district court denied arbitration on two grounds: that Roblox failed to prove the existence of an arbitration agreement and waived the right to arbitrate. Uhl barely defends the district court's holdings and instead relies principally on arguments not addressed by the district court. All of his contentions are meritless.

Faced with evidence that he completed numerous transactions that required agreeing to arbitration and asked to identify the transactions he disputed making personally, Uhl said nothing with respect to 130 transactions. The district court erred by finding that record "ambiguous" and insufficient to support summary judgment. It then erred again by denying Roblox a trial and additional discovery.

Apparently recognizing the flaws in those rulings, Uhl contends that Roblox's website and app failed to provide notice of Roblox's Terms. But those online interfaces more than satisfy the standards specified in this Court's decisions. And Uhl's additional argument that he was not a Roblox "User" conflicts with the plain language of Roblox's Terms.

Uhl's waiver arguments are just as flawed. Uhl's counsel refused for a year to provide the basic account information that Roblox needed to

1

assess and file a motion to compel. The district court held that, notwithstanding those tactics, Roblox waived its right to seek arbitration by filing a motion to dismiss—even though the district court had ordered Roblox to respond to the complaint; Roblox knew at the time that it lacked the facts necessary to support a motion to compel; and Roblox put the court and parties on notice that it was pursuing arbitration by expressly raising the issue in its motion to dismiss.

Waiver standards should neither reward gamesmanship nor promote burdensome motion practice. Accepting Uhl's arguments would do both. The Court should reverse and direct the district court to grant the motion to compel.

**ARGUMENT**

## I.   Uhl Agreed To Arbitrate.

Uhl does little to defend the district court's holding that Roblox provided insufficient proof of contract formation, and the alternative grounds he raises are fatally flawed.

### A.   Roblox's unrebutted evidence establishes that Uhl agreed to the Roblox Terms.

Roblox explained in its opening brief (at 27-35) that it produced sufficient evidence for a reasonable factfinder to conclude that Uhl agreed

2

to the arbitration agreement. That evidence included (1) the list of transactions in which the Uhl account used the Roblox website and app to purchase Robux; (2) a declaration from Roblox demonstrating that consumers agree to the Roblox Terms when they purchase Robux via the website or app; and (3) Uhl's declarations in which he did not deny personally making 130 of the Robux purchases, even though he was asked to list the transactions he disclaimed.

Uhl's responses do not rebut Roblox's evidence.

First, Uhl attempts to reframe his declarations as express denials that he purchased Robux. But he cites his counsel's arguments below, *see* Ans. Br. 47-49 (citing 2-ER-35-36, 2-ER-38, 2-ER-44, 2-ER-103), which are not evidence, *see Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589 n. 4 (9th Cir. 2002) (arguments by counsel "do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment") (quotation marks omitted).

Uhl fails to explain why he did not expressly deny that he made all the Robux purchases if, as his counsel now claims, he did not make them. *See* Ans. Br. 47 (asserting "inartful drafting" of declarations). In response to Roblox's explicit request that he identify the transactions that he did

3

not personally make, Uhl failed to disclaim 130 of them—that is dispositive.[1]

Second, Uhl invokes the summary-judgment standard, claiming that Roblox failed to establish that no reasonable factfinder could find for Uhl. Ans. Br. 49-51. But as Roblox explained in its opening brief, Roblox met its initial burden to demonstrate that Uhl agreed to the Terms. Opening Br. 27-35.

The burden then shifted to Uhl to submit evidence demonstrating a dispute of material fact about whether an arbitration agreement existed. *Id.* at 35-39. Uhl submitted *no evidence* as to 130 transactions. Viewing the evidence in the light most favorable to Uhl, no reasonable factfinder could find for Uhl as to those 130 transactions because Uhl submitted no evidence about them.

Third, Uhl argues that his daughter could not agree to the Terms on his behalf. Ans. Br. 52-54. But his counsel argued below that Uhl's declaration was an "admission" that transactions completed prior to June

---

[1] Uhl stated that he does not "recall" certain information relating to the transactions. Opening Br. 35. But Uhl fails to rebut Roblox's authorities establishing that a failure to recall does not create a dispute of material fact at summary judgment. *Id.* at 36-39; Ans. Br. 51 n.10.

4

14, 2022 were "*authorized* by Mr. Uhl." 2-ER-94; Opening Br. 33. The only logical reading of the declarations is that Uhl personally completed the transactions he did not expressly disclaim. But should the Court disagree, the scope of this purported authorization would at most be a disputed material fact and an additional reason why the district court should have ordered a trial pursuant to Section 4 of the FAA. *See* pp. 5-7, *infra.*

> **B. Alternatively, the district court erred in denying arbitration rather than ordering discovery or holding a trial under Section 4 of the FAA.**

If this Court concludes that Roblox's evidence was insufficient to satisfy the summary-judgment standard, it should nonetheless reverse because the district court was required to hold a trial and grant additional discovery.

*Trial.* By stating that Uhl's declarations were "artfully vague" and that "the facts are ambiguous," 1-ER-16, the district court necessarily determined that there were material disputes of fact about whether an arbitration agreement exists—which required a trial under Section 4 of the FAA. Opening Br. 44-51. "One thing the district court may never do [under the FAA] is find a material dispute of fact *does* exist and then proceed

to *deny* any trial to resolve that dispute of fact." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014).

Uhl does not deny that the district court's characterization of the facts as "ambiguous" necessarily meant that there are disputed facts about contract formation. Ans. Br. 51. Uhl also does not deny that *Howard* required the district court to order a summary trial.

Uhl argues instead that Roblox should not get a trial because it did not ask for one. *Id.* But Section 4 does not require a litigant to request a summary trial—the statute mandates that the trial occur: "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court *shall proceed summarily* to the trial thereof." 9 U.S.C. § 4 (emphasis added). "The word *shall* is mandatory." *Pacito v. Trump*, 169 F.4th 895, 934 (9th Cir. 2026) (quotation marks omitted). And similarly, district courts do not dismiss litigation without a trial after denying a plaintiff's motion for summary judgment on the ground that the plaintiff nowhere expressly requested a trial.

Uhl next argues invited error. Ans. Br. 51-52. But that doctrine applies where a party "introduced, or directly set in motion, the error of which he complain[s]." *Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 963

6

(9th Cir. 2024) (quotation marks omitted). Uhl points to Roblox's motion to compel arbitration, which states—under the header "Legal Standards"—that "the Court may decide the motion based on 'the pleadings, documents of uncontested validity, and affidavits by either party.'" 4-ER-223-24 (quoting *Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*, 2014 WL 3371842, at *3 (N.D. Cal. July 9, 2014)). A general statement about the evidence courts may rely on when ruling on a motion to compel is not a *request* for the district court to decide the motion without a trial. Certainly that statement in a summary-judgment brief would not be held to invite dismissal without a trial. The invited-error doctrine is inapplicable.

*Discovery.* Uhl contends that Roblox should be denied additional arbitration-specific discovery because Roblox's request for discovery was contained in a footnote in its reply brief below. Ans. Br. 52 (citing *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019)).

*Wilson* upheld the denial of discovery because there was no dispute of material fact with respect to the proposed discovery topic. 944 F.3d at 1220 (litigant "offered" no information "on the actual notice issue"). Here,

7

by contrast, Roblox has offered evidence on contract formation and, at minimum, there are disputed material facts regarding that topic.

Roblox did not need to seek discovery earlier. As this Court explained, "[n]othing require[s]" defendants to "seek discovery first" before filing a motion to compel; the FAA contemplates "optional discovery" if the motion is denied "followed by a mini-trial, if necessary." *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 833 (9th Cir. 2022).

### C. Uhl's alternative grounds for affirmance should be rejected.

#### 1. The Roblox website and app provide sufficient notice that completing the transaction constitutes acceptance of the Terms.

The district court never addressed whether the Roblox website and app provide sufficient notice that purchasing Robux constitutes acceptance of the Terms. Uhl's arguments (at 34-43) should be rejected.

*Website*. Roblox explained in its opening brief (at 40-42) that an enforceable online contract requires (1) "reasonably conspicuous notice of the terms to which the consumer will be bound" and (2) the consumer to "take[] some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v.*

8

*Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (quotation marks omitted).

With respect to transactions completed on the website, Uhl does not challenge the second requirement. Ans. Br. 42-43. That is unsurprising. A user's "click of a button can be construed as an unambiguous manifestation of assent" if the user "is explicitly advised that the act of clicking will constitute assent to the terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). The Roblox website notifies the user that submitting payment constitutes agreement to the terms, and the consumer must then click a button labeled "Pay now" in order to complete the transaction, as shown in the image below.



## Payment via Bank card

By submitting payment information you acknowledge that you are at least 18 years old, and that you have read, understood and agree to be bound by Xsolla's End-User License Agreement, Privacy Policy, Refund Policy, Roblox Terms including the arbitration clause, and Roblox Privacy Policy along with the applicable refund and cancellation policies. You authorize Xsolla to charge the total amount shown on this page plus any applicable tax. Please note that the merchant name on your payment method statement will read as Xsolla (USA), Inc. and Xsolla should be contacted for any refunds related to this purchase.



2-ER-124. *See Oberstein*, 60 F.4th at 515-16 (requiring users to click "Place Order" button unambiguously manifested consent).

10

Uhl instead challenges the first element, arguing that the terms are not reasonably conspicuous. *See* Ans. Br. 41-43. This Court requires that notice of the terms be "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it"; the Court analyzes "the visual aspects of the notice within the overall screen design." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (quotation marks omitted).

Uhl first critiques the font size and its placement on the screen. But unlike the notice in *Berman* that was "considerably smaller than the font used in the surrounding website elements" and "so small that it [was] barely legible," 30 F.4th at 856, the notice on the Roblox website is similar in size to the elements on the rest of the screen. The fact that "Roblox Terms" is a hyperlink also is "readily apparent," *id.* at 858, because it is set apart in blue, underlined text, the typical design choice for marking hyperlinks. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156 (9th Cir. 2025); *Berman*, 30 F.4th at 857.

Uhl criticizes the notice's placement on the screen as "sandwiched" between the payment fields and the box for requesting an emailed receipt, Ans. Br. 42, but that placement is ideal because it "interrupts the

natural flow of the action items" so that the user reads the notice as he or she fills out the required fields, *Chabolla*, 129 F.4th at 1157. The notice also is "directly on top of" the "action button," making it even more conspicuous. *Oberstein*, 60 F.4th at 517.

Uhl's final criticism is that users would believe they were agreeing to "Xsolla's … Roblox Terms," arguing that the term "Xsolla's" modifies each hyperlinked term in the list. Ans. Br. 43; p. 10, *supra.* But the list of hyperlinked agreements in the notice includes both the "Roblox Terms" and the "Roblox Privacy Policy," 2-ER-124, and users about to purchase Robux on the Roblox website would readily understand that they were agreeing to *Roblox*'s Terms and Privacy Policy, not Xsolla terms governing Roblox products.

In any event, the hyperlinked phrase "Roblox Terms" provides additional notice about the terms, because users would readily recognize the blue, underlined text as a hyperlink and, if they clicked on it, they would be taken to the correct document. *Oberstein*, 60 F.4th at 516 (key to notice analysis is whether "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink"). Uhl's citation (at 43) to *Doe v. Massage Envy Franchising,* LLC, 87 Cal. App. 5th 23, 31-32

12

(2022), is inapposite. The plaintiff in *Massage Envy* could not easily tell that she had been presented with more than one contract, but a user completing the purchase flow on the Roblox website would understand that the notice includes multiple phrases, each with its own hyperlink to a different agreement—because of the breaks in the underlining. *See* p. 10, *supra*

***App***. The Court need not reach Uhl's challenge to the contract-formation process in the Roblox app because Uhl purchased Robux on the Roblox website (and therefore agreed to the Roblox Terms through the website's purchase flow). 2-ER-129-34 (transactions labelled "Xsolla" completed through website). But Uhl is wrong about the Roblox app as well. His argument (at 36-39) appears to rest on confusion about the purchase flow.

When app users opt to purchase Robux, they are shown the following disclosure at the top of their mobile-phone screen:

13



2-ER-125. Immediately below this disclosure, the screen displays various options for the amount of Robux the user can purchase—$9.99 for 800 Robux, $4.99 for 400 Robux, etc.

Once the user selects the amount of Robux to purchase, the payment features embedded into an Apple iPhone take over (features that work across applications and are neither designed nor controlled by Roblox). The Roblox app goes dark or grayed out, the Apple Pay mechanism pops up, and the user is told to "[c]onfirm" the choice to make the purchase by double clicking the side button:

14



*Apple*

2-ER-126.

An android phone user has a similar experience. After the user selects the amount of Robux to purchase, the Roblox app goes dark, the Google Play mechanism pops up, and the user is told to complete the transaction by pushing the "1-tap buy" button.

15



*Android*

2-ER-126.

Uhl argues (at 36-39) that this purchase flow does not create a valid contract because the Apple Pay and Google Play payment mechanisms "pop up" and gray out the Roblox app. But this Court has expressly rejected "per se design rules that must be followed for a contract to be formed." *Godun,* 135 F.4th at 710. Courts apply a "fact-intensive, totality-of-the-circumstances" analysis focusing on the "expectations of a reasonably prudent internet user." *Id.* at 710.

Roblox's app purchase flow provides reasonably conspicuous notice to a reasonably prudent internet user that they will agree to the Roblox terms if they complete the purchase. At the top of the screen, they are told "[b]y purchasing Robux, you agree to our **Terms of Use** … , including the arbitration clause." 2-ER-125. The hyperlink to the terms is identified through the use of bold and underlined text. *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024) ("darker and bolded text" made hyperlink reasonably conspicuous, even though it was not blue or a different color than surrounding text); *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (similar).

The user also is told precisely what conduct will constitute acceptance—"purchasing Robux." *Berman*, 30 F.4th at 857 ("[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement."). The user then selects the amount of Robux to purchase and is immediately given the choice to complete the purchase when the Apple Pay or Google Play mechanism pops up. Both of these payment mechanisms are well known to reasonably prudent internet and mobile phone users because they are built into the phone interface and used across apps. *E.g.*, Apple Pay,

17

https://www.apple.com/apple-pay/ ("Apple Pay is built into iPhone …."; "Apple Pay is accepted on millions of websites and apps.").

Uhl insists (at 40) that this flow is insufficient because, once the pop-up appears, the "advisal is on a separate page obscured from view." But that happens to every app that allows payment via a third-party mechanism like Apple Pay or Google Play; those payment mechanisms necessarily "pop up" and obscure the underlying app. *Kelly-Starkebaum v. Papaya Gaming Ltd.*, 2024 WL 5135799, at *7 (S.D.N.Y. Dec. 17, 2024) (finding it "irrelevant" that "the notice of the terms was obscured by other screens once a user clicks on the Apple Pay button" because the previous screen "put the user on sufficient notice"). The app thus provides reasonably conspicuous notice that completing the purchase of Robux constitutes acceptance of the terms, and the Court should reject Uhl's invitation to outlaw pop-ups in online contract-formation.

### 2. Uhl is a Roblox "User."

Uhl argued below that the Roblox Terms do not bind him because he is not a Roblox "User." Opening Br. 42-44. On appeal, however, he does not dispute that he is a "User" as the Terms define that word.

He argues instead that he is not bound because "User" is not defined

18

at the very beginning of the contract. Ans. Br. 44-45. Uhl does not cite any case holding that a contract is unenforceable unless it lists at the beginning all the individuals to which that contract applies—contracts often place definitions in subsequent provisions.[2] Certainly individuals who purchase Robux would not be confused about whether the Terms apply to them. As discussed, they are notified at the time of purchase that completing the purchase will bind them to the Terms. *See* pp. 8-18, *supra*.

Uhl also is wrong in asserting that the definition of "User" is "buried in the terms or in a separate document altogether." Ans. Br. 44. The Introduction on the first page of the April 2022 Terms states: "Roblox Terms use some words specific to the Platform, which are generally capitalized" and directs readers to "find definitions for Roblox-specific capitalized words in the Roblox Dictionary." 2-ER-155. The underlined phrase "Roblox Dictionary" is in blue, indicating it is a hyperlink, and any individual

---

[2] If Uhl is arguing that the Terms are unconscionable, that argument is waived because he did not raise it below. *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018). Moreover, California law requires proof of substantive unconscionability, *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 748-49 (Cal. 2015), and Uhl has not even attempted to show that the Terms are substantively unconscionable.

19

who clicks on that link would find an alphabetical list of the defined terms, including "Users." *Id.*; 3-ER-182-88.

## II. Roblox Did Not Waive Its Right To Enforce Uhl's Arbitration Agreements.

Waiver "'is the intentional relinquishment or abandonment of a known right.'" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (citation omitted). This Court requires "'an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.'" *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) (citation omitted). Roblox did not waive its arbitration right.

*First*, waiver cannot be based on Roblox's removal of the case to federal court and its opposition to Uhl's remand motion. The opening brief explains (at 57-58) that courts consistently reject that argument; Uhl has no response.

*Second*, after the district court denied the motion to remand and gave Roblox 18 days to respond to the complaint, Roblox filed a motion to dismiss. But it stated in that motion that it had asked Uhl's counsel for

20

Uhl's usernames "so that Roblox could determine whether Plaintiffs were parties to an enforceable arbitration agreement"; that "Plaintiffs refused to provide this information"; that Roblox therefore could not confirm whether Uhl was party to an arbitration agreement; and that Roblox "expressly reserves, and does not waive, its right to compel arbitration at a later point." 3-ER-294.

*Third*, Uhl's counsel finally provided the requested usernames five weeks after the district court decided the motion to dismiss. 3-ER-213, 3-ER-240. Roblox moved to compel arbitration less than two weeks later.

Roblox's statement in its motion to dismiss affirmed to the parties and the district court that it was pursuing arbitration. And Roblox moved to compel arbitration as soon as it got the information it needed. Roblox therefore did not demonstrate an "actual intention to relinquish" a right to arbitrate or take actions "so inconsistent with the intent to enforce the [arbitration] right as to induce a reasonable belief that it has been relinquished." *Armstrong*, 59 F.4th at 1014.

Uhl attempts to avoid this commonsense result, and justify the refusal to provide usernames, by urging the Court to impose new, ill-de-

21

fined requirements for preventing waiver of the arbitration right. For example, he proposes that the arbitration proponent must file a motion to compel arbitration even when it knows that it lacks the evidence required for such a motion to succeed; and that the arbitration proponent must seek formal discovery rather than attempting to obtain needed information informally.

These new requirements would impose significant costs on parties and courts, don't apply in other contexts, and are irrelevant to determining "intentional relinquishment." They are wholly inconsistent with this Court's waiver standard and, in addition, would violate the FAA.

### A. Suspicion that an arbitration agreement may exist is insufficient to establish waiver.

Roblox explained in its opening brief (at 51-53 & 55) that it could not know whether Uhl agreed to arbitrate his claims without the account username, which Uhl refused to provide for nearly a year. Uhl contends that Roblox "knew all along of its claimed right" to arbitrate because Uhl alleged in the complaint that he purchased Robux after 2017 and all versions of the Roblox Terms since that date have included an arbitration provision. Ans. Br. 18-20 & 23 n.6. Uhl is wrong.

22

### 1. Roblox did not know that Uhl had entered into an arbitration agreement until it received the username.

Uhl's unverified complaint does not establish that Roblox knew about the arbitration agreement. Mere allegations are not evidence, which is why unverified complaints cannot support summary judgment. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006).

Moreover, as Roblox's counsel explained to the district court, "[t]here's a lot of different ways to purchase Robux," the details of which have varied since 2017; the purchase mechanisms include the Roblox website, the Roblox app, Xbox, and different third-party channels, such as in-store purchases of gift cards. 2-ER-32; Opening Br. 7-8. Roblox needed to know the mechanism Uhl used to purchase Robux and when the transaction occurred in order to know what arbitration agreement applied, and whether Uhl had opted out of arbitration. *See* 2-ER-165. Roblox could not identify that information without the username that Uhl withheld. Opening Br. 17, 52-53.[3]

---

[3] Roblox's counsel sought the usernames before the complaint was served by reaching out to plaintiff's counsel. Opening Br. 15. Uhl (at 24) critiques counsel's email for not mentioning the word "arbitration." But the email explained that Roblox sought to verify that plaintiffs were Roblox

23

At most, therefore, the complaint's allegations suggest that an arbitration agreement *might* exist. But waiver requires "intentional" relinquishment of a "known" right. That is why courts refuse to find waiver when the arbitration proponent lacks actual knowledge of the arbitration agreement. *Parsittie v. Schneider Logistics, Inc.*, 2023 WL 2629869, at *4 (C.D. Cal. Feb. 8, 2023) (defendant lacked requisite knowledge "[e]ven if [it] suspected that an arbitration agreement existed"); *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096, at *11 (N.D. Cal. Feb. 24, 2017) (similar); Opening Br. 54 n.10 (listing cases).

### 2. Uhl's authorities confirm that waiver requires actual knowledge.

Uhl cites cases that, he claims, support his argument that mere suspicion is sufficient to support waiver. But those defendants actually knew they had an arbitration agreement with the plaintiff.

*White v. Samsung Electronics America, Inc.*, 61 F.4th 334 (3d Cir. 2023) (Ans. Br. 21-23), involved privacy claims by owners of Samsung

---

"users" and the "amounts spent on the platform"—information Uhl's experienced counsel would know to be relevant to the existence of an arbitration agreement. 3-ER-238.

24

SmartTVs. Samsung needed the serial numbers of the plaintiffs' televisions to know whether the plaintiffs had agreed to arbitrate. *Id*. at 337. Samsung received that information in 2018, but nevertheless moved to dismiss the complaint, and did not notify the court that it intended to move to compel arbitration until 2020. *Id*. The Third Circuit held that Samsung had waived its arbitration rights. *Id*. at 340-41. Uhl's description of *White* conveniently omits that Samsung *already had the serial numbers* before moving to dismiss and sat on that knowledge for two years before seeking to compel arbitration. *See* Ans. Br. 23.

In *Parker v. Kearney School District*, 130 F.4th 649 (8th Cir. 2025) (Ans. Br. 21, 23), the plaintiffs sued as third-party beneficiaries under a contract between a school and its service provider. 130 F.4th at 651-52. The defendant provider challenged the plaintiffs' ability to enforce the contract; after the district court held that they could, the defendant moved to compel arbitration under the very same contract, asserting that it had not known the claims were arbitrable until the district court's summary-judgment ruling. *Id*. at 652-53. The court found waiver because the provider "knew of its existing right to arbitration" long before it moved to

25

compel—"it possessed the arbitration agreement," which was included in the contract being litigated. *Id.* at 654 (quotation marks omitted).

There was no question that the defendant in *Smith v. GC Services Limited Partnership*, 907 F.3d 495 (7th Cir. 2018) (Ans. Br. 21-23), knew the arbitration agreement existed: five months before it moved to compel arbitration, the defendant privately asked the plaintiff to arbitrate pursuant to the agreement. It never indicated to the opposing party or the court that it needed more information to determine the agreement's existence.

In fact, Uhl cites only one case where the Court suggested that suspecting, but not confirming, that a contract existed could be sufficient for waiver: *Houghton v. Polychain Alchemy, LLC*, 2025 WL 2965204 (9th Cir. Oct. 21, 2025) (Ans. Br. 21-22). That unpublished decision is not binding. *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1195 (9th Cir. 2024).

Moreover, *Houghton* is distinguishable. The Court rested its decision on the defendant's failure "to raise the prospect of arbitration much earlier, even if it lacked a present ability to move to compel arbitration"— the defendant had filed multiple motions over 20 months before raising

26

arbitration. 2025 WL 2965204, at *1. Here, by contrast, Roblox raised arbitration in the motion to dismiss, explaining that it needed the usernames it had previously requested.

Also, the *Houghton* defendant had far more information about the arbitration agreement. *Houghton* involved cryptocurrency purchases on the Coinbase platform. The defendant knew such purchases required agreeing to the Coinbase terms, which contained an arbitration agreement with no opt-out provision. 2025 WL 2965204, at *1; Br. of Appellees, *Houghton*, 2025 WL 4481083, at *18 (9th Cir. May 21, 2025). The *Houghton* defendant also knew that plaintiffs made the purchases in question and filed counterclaims on that basis. *Id*. at *6. Roblox, in contrast, had only Uhl's allegation that he had purchased Robux in some fashion, with no knowledge that such purchases had actually occurred—let alone when or how.[4]

---

[4] To the extent *Houghton* determined a litigant could waive a contractual right before the litigant actually knew the contract existed, we respectfully submit it was wrongly decided. *Houghton* relied on *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023), but the *Hill* defendant had actual knowledge about the arbitration agreements because the agreements had been signed by its employees. *Id*. at 460-61, 469-71. *Houghton* pointed—as does Uhl (Ans. Br. 21)—to *Hill*'s statement that "knowledge of an existing right to arbitrate" does not "require[] a present ability to

27

### 3. Roblox was not obligated to pursue arbitration-specific discovery prior to filing the motion to compel.

Perhaps recognizing that mere suspicion about the existence of a contractual right is insufficient to establish waiver, Uhl argues (at 23-24) that the failure to pursue arbitration-specific discovery somehow transforms uncertainty into knowledge. But Uhl is unable to point to a single case requiring a party to engage in formal discovery to preserve its arbitration right.

To the contrary, *Knapke* states that "[n]othing" requires a defendant to seek discovery prior to filing a motion to compel arbitration. 38 F.4th at 833; *see* Opening Br. 48-49.

Uhl claims he is invoking a "consensus rule," but he cites cases where the defendants already had actual knowledge about the arbitration agreements—and not one mentions arbitration-specific discovery.

---

move to enforce an arbitration agreement." 59 F.4th at 469. But *Hill* found waiver because the defendant knew of the arbitration agreement and did not raise the issue with the court or parties even though it was invoking a later arbitration agreement applicable to other parties. Opening Br. 53-55. *Hill* does not support the very different proposition that a defendant may waive a contractual right before the defendant even knows that the contract exists.

28

Ans. Br. 22-23 (citing *White*, *Parker*, and *Smith*). And while *Houghton* states that such discovery is available, it never said such discovery was *required*. 2025 WL 2965204, at *1.

Moreover, Uhl's invented "rule" mandating formal discovery on pain of waiver would create uncertainty and burden courts and litigants. Parties resisting arbitration would have an incentive to rebuff informal requests for information to force delay and lay the foundation for arguing waiver. Proponents of arbitration would have to wonder how long they could pursue those informal requests before they triggered waiver. To avoid that uncertainty, formal discovery demands would become the norm, imposing new costs on parties and burdens on courts as a result.

### B. Roblox did not act inconsistently with a right to arbitrate.

Because Roblox did not know it had an arbitration agreement with Uhl until just before filing its motion to compel, the Court's waiver analysis need go no further—that lack of knowledge precludes waiver. But even if the Court disagrees, it should reverse the waiver holding because Roblox did not act inconsistently with the right to arbitrate. Roblox stated its interest in arbitrating and its need for the username when it

29

submitted its initial response to the complaint, and it filed the motion to compel within two weeks of obtaining that critical information.

In response, Uhl advances two arguments. First, he contends that Roblox should have filed a motion to compel arbitration before it received the username. Second, he insists that filing a motion to dismiss on the merits is sufficient to trigger waiver. Both are wrong.

### 1. Roblox did not have to file a futile motion to compel.

The second waiver element is "satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). That requires a party to affirmatively act to take advantage of the judicial forum even though an alternative path towards arbitration is available. *Newirth ex rel. Newirth v. Aegis Senior Comtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019).

Uhl asserts that, to avoid waiver, Roblox was obligated to respond to the complaint in March 2024 with a motion to compel arbitration even though, at the time, Roblox lacked information necessary to establish that an arbitration agreement was formed. Uhl maintains that "a party

30

need not wait until it has all the evidence required to *win* a motion to compel arbitration before filing one." Ans. Br. 21. In other words, to avoid waiver a party must file a motion to compel that it knows is insufficient.

Uhl's suggestion would create significant tension with the obligation imposed by Federal Rule of Civil Procedure 11(b). *See also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (filings submitted without adequate factual support are subject to sanctions).

Uhl's proposal also conflicts with this Court's rule that parties need not file a futile motion to preserve arbitration rights. *Newirth*, 931 F.3d at 942; *Martin*, 829 F.3d at 1127 n.5; *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694-95 (9th Cir. 1986). "[I]f an earlier attempt to assert the defense of arbitration would have been futile, the failure to take this futile step is not inconsistent with that defense." *Valli v. Avis Budget Grp. Inc.*, 162 F.4th 396, 405 (3d Cir. 2025) (quotation marks omitted); *id.* at 410 (futility excuses "the failure to seek judicial action which the court could not then grant").

Uhl also is wrong to claim that Roblox opted to file a motion to dismiss because "it preferred a public judicial ruling that the claims were

31

barred." Ans. Br. 20.[5] Roblox filed the motion to dismiss because the district court ordered it to respond to the complaint by a date certain and, at that point, Roblox lacked information needed to substantiate a motion to compel arbitration. That did not waive its right to arbitrate.

Uhl's contrary rule would force defendants to file motions to compel prematurely, when they merely suspect that an arbitration agreement may exist. That will increase litigation costs, impose burdens on already overworked district courts, and make arbitration agreements more difficult and costly to enforce—the precise opposite of Congress's plan in enacting the FAA. Opening Br. 70.

### 2. Filing a motion to dismiss does not automatically waive the right to arbitrate.

Uhl next asserts (at 25) that waiver is established whenever the defendant moves to dismiss on the merits. That is not the law.

---

[5] Uhl says Roblox's counsel told the district court "they believed they could get the information necessary [to compel arbitration] through discovery, but chose to wait to seek that discovery until after they got a ruling on the motion to dismiss." Ans. Br. 20-21 (citing 2-ER-32). But Roblox's counsel actually said: "We believed that we would eventually get the information we needed, but we were waiting for *them [plaintiffs] to provide what we needed* in order to go forward with our motion to compel arbitration." 2-ER-32 (emphasis added).

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin*, 829 F.3d at 1125. This Court "consider[s] the totality of the parties' actions," applying a "holistic approach." *Newirth*, 931 F.3d at 941.

Under that standard, courts find waiver when a defendant—knowing that the plaintiff is subject to an arbitration agreement—engages in extensive litigation in court and then surprises the court with a motion to compel arbitration.

Take *Kloosterman v. Metropolitan Hospital*, 153 F.4th 501 (6th Cir. 2025) (Ans. Br. 26-27, 30). There, the defendants moved to dismiss the complaint with prejudice twice, and initiated discovery by agreeing on a joint status report and holding a discovery conference. 153 F.4th at 505. The defendants never told the court they planned to move to arbitrate before filing their motion to compel arbitration, despite having the plaintiff's employment agreement (with the arbitration provision) in hand. *Id.* at 505, 509.

In *White* (Ans. Br. 26), defendant Samsung filed multiple motions to dismiss, submitted a proposed discovery plan, and moved for reconsideration when the district court denied in part the motion to dismiss. 61

33

F.4th at 337-38. Samsung did not alert the court of its right to arbitrate until after that motion for reconsideration was denied. Most importantly, Samsung knew the arbitration agreements existed for 2 years before moving to compel. *Id.*

In *Doyle v. UBS Financial Services, Inc.*, 144 F.4th 122 (2d Cir. 2025) (Ans. Br. 26), the defendants moved to dismiss on the merits and never mentioned the potential for arbitration until after that motion was denied—even though one of the defendants had personally signed the arbitration agreement they later sought to enforce. *Id.* at 124, 130-31.

And in *Houghton* (Ans. Br. 21-22, 25), the defendant did not mention the possibility of arbitration until "twenty months into th[e] litigation," and only after "serving and responding to discovery requests" and filing a motion to dismiss, a motion for reconsideration of the order denying the motion to dismiss, an opposition to the motion to appoint lead counsel, an answer to the amended complaint, and counterclaims that assumed plaintiffs completed the very conduct (transactions on the Coinbase platform) that would have created an arbitration agreement. 2025 WL 2965204, at *2. *See also St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 587 (7th Cir. 1992) (finding

34

waiver because defendant first mentioned arbitration in answer to complaint after losing motion to dismiss).

A defendant avoids waiver under this Court's precedents if it explains to the district court that an arbitration agreement may exist and it may move to compel in the future, but is not presently able to do so. For instance, in *Armstrong* (Ans. Br. 25, 28), the defendant repeatedly told the district court about its right to arbitration, including in the answer, the joint case management statement, and at the initial case management conference. 59 F.4th at 1013. This Court determined that the defendant had not waived arbitration, even though it did not move to compel for 10 months. *Id.* at 1015-16.

And in *Hill*, while recognizing the defendant could not immediately file a motion to compel due to the case's procedural posture, this Court stated the defendant had "to set the record straight" by notifying the district court about its potential arbitration rights. 59 F.4th at 481; Opening Br. 53-54; *see also Valli*, 162 F.4th at 409 (explaining that "a defendant must provide clear, reasonably prompt record notice of its intent to compel arbitration" to "preserve future arbitration rights it cannot presently enforce").

35

That is exactly what Roblox did here. Roblox's motion to dismiss alerted the district court about a potential arbitration agreement and identified the information it needed to move to compel arbitration. 3-ER-294. Roblox did not hide the ball, and it certainly was not pursuing a decision on the merits while in possession of the facts needed to compel arbitration—unlike the defendants in *Kloosterman*, *White*, *Doyle*, and *St. Mary's*.[6]

Finally, Uhl argues (at 29) that the length of time (11 months) between the filing of the complaint and the motion to compel arbitration somehow demonstrates waiver. But the length of time that the parties spend litigating prior to a motion to compel is not dispositive, particularly when it would have been futile to file the motion to compel earlier. *See Fisher*, 791 F.2d at 695 (no waiver of arbitration despite three years of litigating because of futility).

None of Uhl's cases (at 29-30) involved a litigant—like Roblox

---

[6] The facts here also are fundamentally different from cases Uhl cites in which a litigant filed a motion to dismiss and acknowledged to the court that an arbitration agreement existed, but wished to compel arbitration only if the dismissal motion were denied. *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 919 (8th Cir. 2009) (Ans. Br. 26 n.7); *Newirth*, 931 F.3d at 942 (Ans. Br. 25).

here—for whom filing earlier would have been futile. *See, e.g.*, *Support Comty., Inc. v. MPH Int'l, LLC*, 2025 WL 547380, at \*1 (9th Cir. Feb. 19, 2025) ("Though it could have petitioned to compel arbitration in its first responsive pleading in state court, … it failed to do so for nearly ten months…."); *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 950 (1st Cir. 2014) ("We agree that mere delay in asserting a right to arbitrate, without more, does not require a finding of waiver.").[7]

### C. The district court's waiver holding violates the FAA.

Roblox explained in its opening brief (at 66-69) that affirmative defenses are waived if not pleaded in the answer, and that, because arbitration is an affirmative defense, the same rule should apply here pursuant to the FAA's equal-treatment rule.

Uhl says (at 30-31) that Roblox must be referring to the doctrine of "forfeiture" rather than "waiver," and observes that some courts have deemed the arbitration right waived even before the defendant filed an

---

[7] Uhl (at 28-29) urges the Court to ignore *Global Security & Communications, Inc. v. AT&T*, 1999 WL 513873 (9th Cir. July 20, 1999). But that decision holds that, for purposes of waiver, the critical inquiry is how long a defendant waited to file a motion to compel *after* the defendant had the information needed to file such a motion. *Id.* at \*1-2. Roblox waited even less time to file than the defendant in *Global*, so there was no waiver.

answer. But the Supreme Court in *Morgan* reserved the question whether claims that "a party's litigation conduct results in the loss of a contractual right to arbitrate" should be determined under "rules of waiver, forfeiture, estoppel, laches, or procedural timeliness." 596 U.S. at 416.

The FAA's equal-treatment rule bars discrimination against arbitration, and that weighs heavily in favor of applying the forfeiture principles that the Federal Rules of Civil Procedure apply to other affirmative defenses—as the Missouri Supreme Court concluded. Opening Br. 68. Certainly the equal-treatment rule precludes application of Uhl's arbitration-only standards that would make it much easier to find waiver of an arbitration right than of other rights.

## CONCLUSION

The Court should reverse the district court's order denying the motion to compel arbitration and remand with instructions to grant the motion.

Dated: April 13, 2026          Respectfully submitted,

                              */s/ Andrew J. Pincus*
                              Andrew J. Pincus
                              Carmen N. Longoria-Green
                              MAYER BROWN LLP
                              1999 K Street, NW
                              Washington, DC 20006
                              Telephone: (202) 263-3000
                              apincus@mayerbrown.com


                              *Attorneys for Defendant-Appellant*

39

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned counsel states that there are no related cases pending before this Court.

Dated: April 13, 2026        */s/Andrew J. Pincus*
Andrew J. Pincus

40

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32-1(a) because this brief contains 6,996 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Dated: April 13, 2026                                      */s/Andrew J. Pincus*
                                                           Andrew J. Pincus

41

42

## CERTIFICATE OF SERVICE

I certify that on April 13, 2026, the foregoing document was served

on all parties or their counsel of record through the CM/ECF system.

*/s/Andrew J. Pincus*
Andrew J. Pincus

42